David A. **SHEVOCK**, Plaintiff Below, Appellant,

v.

The **ORCHARD HOMEOWNERS ASSOCIATION, INC.**, a Delaware Corporation, Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: Nov. 24, 1992.
Decided: March 10, 1993.
Rehearing Denied April 7, 1993.

Craig A. Karsnitz, Young, Conaway, Stargatt & Taylor, Georgetown, for appellant.

David N. Rutt, Moore & Rutt, P.A., Georgetown, for appellee.

Before VEASEY, C.J., MOORE and HOLLAND, JJ.

MOORE, Justice.

David M. Shevock appeals a decision of the Court of Chancery invalidating a zoning ordinance that changed the classification of his property from residential to commercial. In support of his zoning application, appellant offered evidence of his proposed use of the land that was inconsistent with the uses permitted in a commercial zone. The Planning Commission and Sussex County Council approved his request on the basis of the impermissible use. Appellee, The Orchard Homeowners Association ("Homeowners"), sought an injunction from the Court of Chancery to prohibit implementation of the ordinance. The Vice Chancellor ruled that the County Council's action, rezoning the land for an impermissible use, was arbitrary and capricious. We agree and affirm.

## I.

Mr. Shevock sought to amend the zoning designation of a 9.8 acre parcel of land in Lewes and Rehoboth Hundred from an AR–1 (Agricultural–Residential) designation to C–1 (General Commercial). In his application, Mr. Shevock represented that if the County were to rezone the property, he intended to use it for a construction office and an equipment and material storage yard.

The parcel slightly resembles a rectangle which has its two longer sides running in an east-west direction. Railroad tracks border the southern side of the parcel. A concrete vat plant, a vacant 20 acre commercially zoned parcel, and a vacant non-commercial parcel of property are located to the south of the railroad tracks. Route 269A, a minor thoroughfare, borders the parcel on the west. A field abuts the other side of 269A. To the west of this field is the residential subdivision of Sand Dune Village. A landfill that abuts the parcel at issue on the north is zoned AR–1 but is a prior non-conforming use. The residential subdivisions called The Orchard and Tradewind Estates lie north of the landfill. To the east of Mr. Shevock's property is a vacant non-commercial property. Further east of this vacant lot is the community of Covey Creek.

The Sussex County Planning and Zoning Commission (the "Commission") held a public hearing on the application. The Commission found that the proposed use would not pose a traffic problem; that the soil on the site is of fair to good suitability for the intended use; that the site is adjacent to a dirt pit style landfill and a railroad, and it is across from a concrete vat plant and a vacant 20 acre commercially zoned parcel; and that the site is not suitable for residential development. Based on the parcel's location between a railroad and landfill, as well as the fact that other commercial uses

existed in close proximity to the site, the Commission recommended approval of Mr. Shevock's rezoning request.

Thereafter, the Sussex County Council held a hearing on the application, and incorporated the complete findings of fact and recommendations of the Commission into the record. At the hearing Mr. Shevock testified that he would use the site as a construction yard and office. He introduced a site plan devoting approximately 5.27 acres to equipment or material open storage. During his testimony, Mr. Shevock further elaborated on his proposed use of the site. He explained that when any of his 25 vehicles or pieces of construction equipment were not at a work site they would be stored outside on the rezoned parcel, along with fuel for the equipment. Materials, such as pipe, pipe fittings, and stone would also be stored outside with the equipment in the site's material storage yard.

At the conclusion of the hearing, the application was tabled. Several months later the Council voted 3–2 in favor of rezoning appellant's property to a C–1 designation. The rationale given by the Council is as follows: one council member voted in favor of the application because of the property's close proximity to other commercial uses and his belief that the nearby existing landfill posed a much greater hazard than the use proposed by the appellant. Another member voted "yes" because of the existing commercial uses in the area. The third member voted "yes" for the same reasons that the Commission approved the application. Two Council members voted against the measure because of residential uses in the area. One of the dissenters also observed that the proposed use is not permitted in a C–1 district, that there is no need for additional commercial uses in the area, and that the rezoning would be inconsistent with the Coastal Land Use Plan.

The gravamen of the Homeowners' complaint in the Court of Chancery was that the Council's rezoning decision departed from the statutory mandates regarding uses permitted in a C–1 zoning district. The Vice Chancellor declared the ordinance null and void as "arbitrary and capricious since Mr. Shevock's proposed use for the site clearly does not fall within the permitted uses for C–1 property under the Sussex Code." *Orchard Homeowners Association Incorp. v. County Council of Sussex County,* Del.Ch., C.A. No. 213, Chandler, V.C., slip op. at 10, 1992 WL 71448 (March 31, 1992). Appellant's motion for reargument was denied.

## II.

■ Mr. Shevock claims that the Court of Chancery lacked subject matter jurisdiction under our declaratory judgment law, 10 *Del.C.* § 6501, *et seq.,* to hear the dispute. Specifically, he contends that the suit was premature and unsupported by independent equitable jurisdiction. In rejecting that argument, the trial court held that proper subject matter jurisdiction existed because Homeowners had vested rights in real property affected by the rezoning decision and was entitled to declaratory relief. We review challenges to subject matter jurisdiction to determine whether the trial court correctly formulated and applied legal precepts. *Sanders v. Sanders,* Del.Supr., 570 A.2d 1189, 1190 (1990).

## III.

### A.

We first address the ripeness issue. Shevock argues that the trial court has no role in determining whether an applicant's proposed development meets the permitted uses of a zoning district. Instead, he contends that this is the province of the Board of Adjustment. Thus, Shevock maintains that the trial court's inquiry is limited to whether the rezoning is consistent with the policy considerations of the Comprehensive Plan, not the propriety of any proposed uses. Under such circumstances, Shevock argues that any court action, prior to review by the appropriate administrative agency, is clearly unripe and beyond the subject matter jurisdiction of the court.

■ The appellant is correct to the extent that ripeness is a critical element of a declaratory judgment action. *Stroud v.*

*Milliken Enterprises, Inc.*, Del.Supr., 552 A.2d 476, 479 (1989). In examining that question, a court must consider the legitimate interest of the plaintiff in a prompt resolution of the question presented and the hardship that further delay may impose. All that is required, therefore, is that the court make a common sense determination that the plaintiff's interest in a swift resolution of the case outweighs the court's interest in postponing review until the question arises in some more concrete and final form. *Schick, Inc. v. ACTWU*, Del.Ch., 533 A.2d 1235, 1239 (1987) (*quoting Continental Air Lines, Inc. v. C.A.B.*, 522 F.2d 107, 124–25 (D.C.Cir.1974)).

■ Clearly, Homeowners had a substantial interest in obtaining swift resolution of this dispute. It filed this suit under 10 *Del.C.* § 6502 (Supp.1990), which provides:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, *municipal ordinance*, contract or franchise, may have determined any question of construction *or validity* arising under the instrument, statute, *ordinance*, contract or franchise and *obtain* a declaration of rights, status or other legal relations thereunder.

10 *Del.C.* § 6502 (Supp.1990) (emphasis added). Obviously, Homeowners sued to obtain an immediate declaration of its members' rights as to the continued use and enjoyment of their land. The negative effects of heavy duty commercial development, once established near a residential subdivision, are hard to reverse. Homeowners' legitimate interest in a prompt resolution of the issues is both understandable and indisputable. Any delay in adjudicating the parties' rights was unnecessary.

With a complete record before it, the trial court was fully informed of all relevant facts and had no reason to delay its evaluation of the Council's decision. That record clearly demonstrates a real controversy between the parties affecting substantial rights in the use of their respective lands. Ripeness, therefore, is manifest on this record.[1]

### B.

Shevock's argument, that the trial court based its decision on a hypothetical proposed use of the land, is misplaced. Appellant suggests that his introduction of the site plan and accompanying testimony was nothing more than a general idea of his intended use of the property at that time. Mr. Shevock would have this Court deem all prior evidence of his proposed use irrelevant to the zoning determination because he is free to change his mind at will. That proposition is specious on its face and requires no further analysis to warrant its rejection. The appellant must live with the record he made below—a record, ironically, that was intended by him to facilitate approval of the zoning ordinance.

■ The irony of seeking a zoning classification for a use not permitted thereunder is impossible to overlook. We have long recognized that the inherent conflict between zoning laws and common law property rights requires the strictest compliance with all applicable procedures. *Carl M. Freeman Associates, Inc. v. Green*, Del.Supr., 447 A.2d 1179, 1182 (1982). Thus, a zoning action not taken in accordance with the law is deemed arbitrary and capricious. *New Castle County Council v. BC Development Associates*, Del.Supr., 567 A.2d 1271, 1278 (1989); *Green v. County Council of Sussex County*, Del.Ch., 508 A.2d 882, 890 (1986), *aff'd*, Del.Supr., 516 A.2d 480 (1986). That is the

---

1. Mr. Shevock's suggestion that the risk of adverse impact to Homeowners goes to the issue of standing, and not jurisdiction, is misplaced. Appellant's authority, *Association of Citizens of North of Dover, Inc. v. Regional Planning Commission of Kent County, et. al.*, Del.Super., 88A–JL03, Ridgely, J., 1990 WL 263562 (December 26, 1990) (discussing homeowners' association standing to bring a lawsuit on behalf of its members), is inapplicable to this case. Instead, the jurisdictional prerequisites set out in *Schick, Inc. v. ACTWU*, Del.Ch., 533 A.2d 1235, 1238 (1987), establish the relevance of the potential adverse impact to Homeowners on the question whether the court had subject matter jurisdiction to render a declaratory judgment.

**350**

situation here. The County Council's approval of the rezoning ordinance in contravention of the permissible uses under a C–1 zoning classification mandated invalidation of the ordinance.

## IV.

The record fully supports the trial court's action. The transcript of the Shevock hearing before the County Council clearly discloses the proposed use of the property to be a construction storage yard. Yet, such use directly contravenes the permitted uses for a C–1 district. The Sussex County Code defines the purpose of a C–1 general commercial district as one:

> [T]o provide sufficient space in appropriate locations for a wide variety of commercial and miscellaneous service activities generally serving a wide area and located particularly along certain existing major thoroughfares where a general mixture of commercial and service activity now exists, *but which uses are not characterized* by extensive warehousing, frequent heavy trucking activity, open storage of materials or the nuisance factors of dust, odor and noise associated with manufacturing.

Sussex County Code Article XI, § 115–76 (emphasis added). The construction storage yard proposed by Mr. Shevock and approved by the Council is expressly prohibited by Article XI, § 115–76. Furthermore, it is not a material storage yard within the meaning of Article XI, § 115–77. Section 115–77 only relates to permitted uses incidental to an authorized activity on the property. Since open storage of construction equipment constitutes the primary, if not sole use of the property, section 115–77 has no applicability whatsoever. Thus, it was error for the County Council to approve the rezoning application for a C–1 district *on the sole basis of* a use expressly prohibited by that zoning classification in the Sussex County Code.

For the foregoing reasons the judgment of the Court of Chancery is AFFIRMED.