IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TOWN OF CHESWOLD, | § | |
| | § | No. 270, 2017 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. K13M-08-016 |
| CENTRAL DELAWARE | § | |
| BUSINESS PARK, | § | Court Below: Court of Chancery |
| | § | of the State of Delaware |
| | § | |
| Respondent Below, | § | C.A. No. 1574-JJC |
| Appellee. | § | |

Submitted:  April 13, 2018
Decided:  June 8, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

Upon Appeal from the Superior Court and the Court of Chancery of the State of Delaware (Consolidated): **REVERSED** and **REMANDED**.

Max B. Walton, Esquire *(argued)*, Kyle Evans Gay, Esquire, Connolly Gallagher LLP, Newark, Delaware, for Petitioner Below, Appellant Town of Cheswold.

Mark F. Dunkle, Esquire, Parkowski, Guerke & Swayze, P.A., Dover, Delaware, for Respondent Below, Appellee Central Delaware Business Park.

**SEITZ**, Justice:

In this appeal, we consider whether stipulated court orders agreed to in 2005 by a property owner and the Town of Cheswold prevent the Town from enacting new ordinances affecting the property. Applying *res judicata*, the Superior Court found that they did, and entered a judgment prohibiting the Town from enacting any ordinance impairing the property owner's existing development rights.

We reverse the Superior Court's judgment and hold that the 2005 stipulated orders do not prohibit the Town from enacting future ordinances affecting the property. If the Town eventually adopts a new ordinance, any future litigation over the property owner's vested rights should be resolved by applying the balancing test in *In re 244.5 Acres of Land*.[1]

I.

The Central Delaware Business Park owned nineteen lots in a planned industrial park in the Town of Cheswold. Before the Town's adoption of the ordinance causing the controversy later resolved by the stipulated orders, the lots were zoned M-1 Industrial under the Town's 1977 zoning code.[2] In 2005, as part of a comprehensive effort to modernize its zoning code, the Town proposed an amended ordinance changing zoning classifications and permitted and proscribed

---

[1] 808 A.2d 753 (Del. 2002).
[2] App. to Opening Br. at 12 (Town of Cheswold, Zoning Ordinance (Dec. 20, 1977)). The 1977 Ordinance specified the allowed uses of the property, building setback lines, and lot sizes. *Id.* at 21–25 (1977 Ordinance, at 6–9).

2

uses within the new zoning districts. Under the proposed ordinance, the Business Park's property would have been separated into two new zones: I-1 Light Industrial and I-2 Heavy Industrial. According to the Business Park, the new ordinance would "downzone" the entire business park and impair the rights of third parties who installed improvements and buildings in reliance on the 1977 code.[3]

At a public hearing, the Business Park representatives objected to the 2005 Ordinance, explaining it would "cause an immediate financial hardship" by impairing five pending purchase agreements, affect the existing property owner's present uses, and interfere with the development plan under the 1977 zoning.[4] They proposed an amendment to the 2005 Ordinance, Article 5A, that would allow it to retain the M-1 Industrial zoning under the 1977 zoning code. At the public hearing, the Town agreed to adopt Article 5A, but when the Town published the 2005 Ordinance, Article 5A was not included.

The Business Park filed suit in Superior Court seeking a writ of mandamus to compel the Town to publish Article 5A, revise the minutes of the public hearing to show that the Town unanimously accepted the Article, and approve the Business Park's pending site plan applications.[5] The Business Park also filed suit in the Court

---

[3] *Id.* at 42 (Pet. for Writ of Mandamus, *Cent. Del. Bus. Park v. Town of Cheswold*, No. 05M-07-021, at 4 (Del. Super. July 21, 2005)).

[4] *Id.*

[5] *Id.* at 39 (Pet. for Writ of Mandamus).

of Chancery seeking, along with other relief, a declaration that the Business Park had vested rights to its M-1 Industrial zoning under the 1977 zoning code.[6] The two cases were consolidated and heard by the Superior Court.[7]

The parties eventually settled the litigation by filing essentially identical stipulated orders in each court.[8] Under the stipulated orders, the Business Park agreed to drop its claims, and the Town agreed to allow the Business Park to "continue with M-1 Zoning and site plans/building procedures under the 1977 Zoning Code"; to approve all the Business Park's "pending site plan and building permit applications";[9] and to amend the 2005 Ordinance to include Article 5A. Article 5A states:

> It is necessary and desirable, as a matter of public policy, to recognize vested property development rights in order to ensure reasonable certainty, stability, and fairness in the land use planning process and in order to stimulate economic growth, secure the reasonable investment-backed expectations of landowners, and foster cooperation between the public and private sectors in the area of land use planning. . . . The [Central Delaware Business Park's plans] satisfy the provisions of this section as vested in development plans . . . .

---

[6] *Id.* at 52 (Compl., *Cent. Del. Bus. Park*, No. 1574-K (Del. Ch. Aug. 19, 2005)).

[7] Stipulation & Order to Consolidate Cases, *Cent. Del. Bus. Park*, Nos. K13M-08-016, 05M-07-021 (Del. Super. Apr. 25, 2014)).

[8] App. to Opening Br. at 75–76 (Stipulation & Order of Dismissal, *Cent. Del. Bus. Park*, No. 1574-K (Del. Ch. Sept. 28, 2005)); *id.* at 77–78 (Stipulation & Order of Dismissal, *Cent. Del. Bus. Park*, No. 05M-07-021 (Del. Super. Nov. 1, 2005)). The Superior Court refers to a "settlement agreement incorporated into these orders." *Town of Cheswold v. Cent. Del. Bus. Park*, 163 A.3d 710, 715 (Del. Super. 2017). A separate settlement agreement is not in the record. The Superior Court was likely referring to the stipulated consent orders as the settlement agreements.

[9] App. to Opening Br. at 76, 77.

A vested property right shall be deemed established with respect to any lots, parcels or tract of land created as part of a land development plan approved by the Town of Cheswold under the Zoning Ordinance. . . . A vested property development right, once established as provided in this Article 5A, precludes any zoning or land use action by the Town of Cheswold which would alter, impair, prevent, diminish, impose a moratorium on development, or otherwise delay the development or use of the property subject to Section 16-6, except with the written consent of the owner of such land.[10]

Eight years later, the Town considered enacting a new ordinance affecting the Business Park's remaining six lots.[11] Unclear about the effect of the earlier stipulated orders and threatened by the Business Park with a contempt proceeding if the Town proceeded with any new ordinance,[12] the Town filed a petition for declaratory judgment in Superior Court to clarify whether the 2005 orders prohibited it from rezoning the Business Park. In the alternative, the Town sought relief from the stipulated orders because the 2005 Ordinance amounted to illegal contract zoning. The Town argued that because the stipulated orders only required the Town to include Article 5A in the adopted ordinance and approve the Business Park's

---

[10] *Id.* at 88–89 (Town of Cheswold, 2005 Land Use Ordinance, § 16-6 (Apr. 2005)).

[11] App. to Answering Br. at 50 (Monthly Town Council Meeting Minutes (Sept. 3, 2013)); *see id.* ("[T]he Council desires to make decisions and changes directed by our Land Use Ordinance for properties within the Business Park that were not developed but previously designated as M-1."); *id.* at 83–84 (Theon Callender Dep., *Town of Cheswold*, No. K13M-08-016, at 34 (Del. Super. Sept. 25, 2016)) (explaining that the Town Council sought to "make decisions and changes as directed by our land use ordinance").

[12] App. to Opening Br. at 135 (Tr., *Town of Cheswold*, No. K13M-08-016, at 74 (Del. Super. Nov. 18, 2016)).

5

pending applications, the stipulated orders did not bar the Town from passing new ordinances that affected the property.

In response, the Business Park argued that the stipulated orders incorporated the substance of Article 5A, which recognized the Business Park's vested rights to the 1977 zoning classification. Thus, according to the Business Park, the Town was prohibited from enacting any new ordinances affecting the Business Park's vested property rights. The Business Park also argued that the stipulated orders did not amount to illegal contract zoning because they were not a contract. Rather, it argued that a vested right existed in a validly approved zoning ordinance and did not illegally contract away the Town's power.[13]

The Superior Court, on its own initiative, raised *res judicata* as a possible bar to the Town's request for relief, and eventually concluded that the Town's claims were "dispensed with by *res judicata*" and the law of the case doctrine because the Business Park "acquired vested rights pursuant to the settlement agreement entered as stipulated judgments in 2005."[14] According to the court, the Business Park's "vested rights remain perpetually vested."[15] Thus, the court held the Town could

---

[13] *See Town of Cheswold*, 163 A.3d at 730–31 ("This agreement was not strictly a private agreement between the Town and the developer. . . . While it acknowledges a single resident's vested rights, the provision is in furtherance of the Town's police powers because the Town recognized that acknowledging these rights was for the public benefit.").

[14] *Id.* at 718.

[15] *Id.*

6

not enact legislation changing the zoning for the Business Park's lots.[16] The court entered a judgment declaring that the Business Park's rights were "vested as provided in the 2005 Stipulated Orders" and "the Town is prohibited from enacting any ordinance that would impair" its vested rights.[17]

## II.

Three issues are raised on appeal—the first one by this Court, and the other two by the Town. First, does the dispute present a justiciable controversy; second, did the Superior Court properly hold that the Town's declaratory judgment claims were barred by *res judicata*; and finally, does the Business Park have perpetual vested rights to its existing zoning classification, such that the Town cannot enact any new ordinance affecting the property.

### *A.*

### *Justiciability*

Although the justiciability issue was raised at oral argument in the Superior Court, the court passed over the issue because "neither party dispute[d] that there is an actual controversy."[18] On appeal, we raised the issue once again to ensure that the issues involved present an actual controversy that is ripe for review.[19]

---

[16] *Id.*

[17] Order, *Town of Cheswold*, No. K13M-08-016, ¶ 3 (Del. Super. June 6, 2017).

[18] *Town of Cheswold*, 163 A.3d at 718.

[19] *See Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989) ("[I]n weighing whether the time is ripe for judicial determination, the willingness of the parties to litigate is immaterial.").

The Town sought relief from the stipulated orders through the Declaratory Judgment Act.[20] The Act is used "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations."[21] Not all disputes, however, are appropriate for judicial review when parties request it. Under the Act, there must be an actual controversy between the parties, meaning:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking de[c]laratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[22]

The first three elements are met in this case—the controversy involves the Business Park's legal rights in its zoning classification; the Town has an interest in contesting the Business Park's rights because it intends to rezone the property; and the interests are real and adverse. It is only the last factor that made us pause—whether the controversy is "ripe for judicial determination."[23] Our concern arose because the Town has not yet adopted a new ordinance that would affect the

---

[20] *Town of Cheswold*, 163 A.3d at 717.

[21] 10 *Del. C.* § 6512; *KLM Royal Dutch Airlines v. Checchi*, 698 A.2d 380, 382 (Del. Ch. 1997) ("[T]he objective of such an action is to advance the stage of litigation between the parties in order to address the practical effects of present acts of the parties on their future relations.").

[22] *Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662–63 (Del. 1973).

[23] *Id.*; *see also Shevock v. Orchard Homeowners Ass'n*, 621 A.2d 346, 348 (Del. 1993) ("[R]ipeness is a critical element of a declaratory judgment action."); *XI Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) ("[T]he underlying purpose of [the ripeness] principle is to conserve limited judicial resources and to avoid rendering a legally binding decision that could result in premature and possibly unsound lawmaking.").

Business Park's property rights. We find, however, the case is sufficiently ripe to decide whether *res judicata* prevented the Town from adopting ordinances affecting the Business Park property. But, as will be discussed later, the status of the Business Park's rights under any new ordinance is not ripe for judicial review and will have to await legislative action by the Town.

A case is ripe for judicial review when the dispute has matured to the point where the plaintiff has suffered or will imminently suffer an injury.[24] Using a "common sense assessment" of the facts, a court should hear a dispute when "litigation sooner or later appears to be unavoidable and where the material facts are static."[25] If facts are still unknown or changing, however, the court should be reluctant to weigh into the controversy, for fear it might be offering only advice and a premature binding decision.[26]

---

[24] *New Castle Cty. v. Pike Creek Recreational Servs., LLC*, 2013 WL 6904387, at *7 (Del. Ch. Dec. 30, 2013), *aff'd*, 105 A.3d 990 (Del. 2014) (finding a claim was not ripe when the developer had not applied for nor had the county rejected a request for an extension to complete its development plan); *Toll Bros., Inc. v. Wicks*, 2006 WL 1829875, at *7 (Del. Ch. June 21, 2006) (finding the claim was not ripe because the developer had "not yet obtained a final decision on its development plans" from the Delaware Department of Transportation and "it currently may be pursuing any of the several administrative remedies available to it"); *E. Shore Envt'l, Inc. v. Kent Cty. Dep't of Planning*, 2002 WL 244690, at *7 (Del. Ch. Feb. 1, 2002) (finding a claim was not ripe when the county has not commenced formal enforcement of a zoning law prohibiting a property owner's right to operate a dry and solid waste facility).

[25] *XI Specialty Ins. Co.*, 93 A.3d at 1217.

[26] *Calagione v. City of Lewes Planning Comm'n*, 2007 WL 4054668, at *3 (Del. Ch. Nov. 13, 2007) (finding the claim was not ripe because "any harm that petitioners identify is speculative," and "issuance of an injunction, at this juncture, would be premature" when "all that has happened is that the City has approved" the subdivision plans, and "[n]othing has been constructed").

Ordinarily, the Town would have enacted the new ordinance, and the parties would have litigated the vested rights issues when the Town applied the new ordinance to the Business Park. But, the Business Park took that option away when it threatened to petition the Superior Court to hold the Town in contempt if the Town adopted the new ordinance. Instead of risking contempt, the Town acted reasonably by bringing a declaratory judgment action to determine the effect of the stipulated orders. At least as far as the *res judicata* question is concerned, the facts are static, as evidenced by the parties' cross-motions for summary judgment, and the dispute has matured to the stage where judicial relief involving the stipulated orders can be provided in concrete form.[27] Thus, this aspect of the dispute is ripe for judicial review.

## B.

## Res Judicata

The Superior Court reasoned that the stipulated orders resolved for all time the Business Park's vested rights to the 1977 M-1 Industrial zoning classification

---

[27] *See Shevock*, 621 A.2d at 349 (finding a zoning dispute was ripe because the plaintiffs had a "legitimate interest in a prompt resolution" and the "trial court was fully informed of all relevant facts and had no reason to delay its evaluation"). The Business Park tries to blend a laches argument with the ripeness inquiry. Resp't's Letter Submission, *Town of Cheswold*, 270, 2017, at 9–11 (Del. Apr. 13, 2018). The connection of the two is not obvious, but in any event, the Business Park did not show a change of position and prejudice necessary to assert the affirmative defense. *See Hillside Inv., Inc. v. Rodel, Inc.*, 577 A.2d 753, 1990 WL 72596, at *3 (Del. Apr. 17, 1990) (TABLE) ("Mere delay without an accompanying change of position resulting in prejudice to the party asserting such defense is insufficient as a matter of law to establish laches.").

and, applying *res judicata*, held that the Town could not re-litigate the issue through its declaratory judgment action. *Res judicata*, however, was not the proper legal framework to resolve the Town's claims.

In its petition for a declaratory judgment, the Town argued that, under its interpretation, the orders did not "preclude legislative discretion to enact ordinances, rules, and regulations relating to zoning, site plan, or building permit procedures for the M-1 Industrial zoned lands in the Central Delaware Business Park."[28] According to the Town, the stipulated orders only required the Town to adopt the 2005 Ordinance with Article 5A included and to process the Business Park's pending applications under the 1977 Ordinance. The Business Park took the opposite position and argued that the stipulated orders incorporated Article 5A and established for all time the Business Park's rights to be subject only to the 1977 M-1 Industrial zoning.

Thus, the Superior Court was confronted with an interpretive dispute and not a *res judicata* question. Under *res judicata*, the claims asserted in the earlier action must be the same as those asserted in the present action.[29] That is not the case here. The Town is not attempting to re-litigate the 2005 claims by re-asserting the same

---

[28] Pet. Requesting an Order and Motion to Clarify Scope and/or for Relief, *Town of Cheswold*, No. K13M-08-016, at ¶ 1 (Del. Super. Aug. 15, 2013).

[29] *Mott v. State*, 49 A.3d 1186, 1189 (Del. 2012); *see also Kossol v. Ashton Condo. Ass'n*, 637 A.2d 827, 1994 WL 10861, at *2 (Del. Jan. 6, 1994) (TABLE) ("Under Delaware law, *res judicata* bars litigation between the same parties if the claims in the later litigation arose from the same transaction that forms the basis of the previous adjudication.").

claims in the present action. Instead, the Town brought a declaratory judgment to determine the scope of the 2005 stipulated orders—a claim that was never brought and could not have been brought as part of the 2005 cases in the Superior Court and the Court of Chancery.[30]

Even though the Superior Court viewed the dispute through the wrong legal lens, its analysis of the interpretive issues still bears directly on the Town's Petition. As explained next, we disagree with the Superior Court that the stipulated orders prohibited the Town from enacting any new ordinances affecting the Business Park's property.

## C.

### *Incorporation by Reference*

The Superior Court first found that the stipulated orders incorporated the substance of Article 5A by reference, which, according to the court, recognized the Business Park's perpetual vested rights.[31] Thus, the Town could not adopt a new ordinance affecting the Business Park's vested development rights. The Town argues that the stipulated orders did not incorporate Article 5A because the reference

---

[30] For the same reason, law of the case does not apply. The Town was not re-litigating an issue already decided by either the Superior Court or the Court of Chancery. Instead, the Town sought an interpretation of the effect of the stipulated orders.

[31] *Town of Cheswold*, 163 A.3d at 721 (finding it "clear that the parties intended this provision to be incorporated by reference"); App. to Opening Br. at 89 (2005 Land Use Ordinance, § 16-6) ("[A] vested property right shall be deemed established with respect to any lot, parcel or tract of land [including the Business Park].").

to Article 5A in the orders "serve[d] only to memorialize the agreement between the parties that the Town's legislative act would be reflected in the republished version of 2005 Ordinance."[32] According to the Town, the stipulated orders "do not include a statement that the M-1 Amendments should be treated as if they [were] contained with the 2005 Stipulations of Dismissal."[33] In response, the Business Park claims that the court properly incorporated the substance of the M-1 Amendments because "[a] contract can be created by reference to the terms of another instrument if a reading of all documents together gives evidence of the parties' intention and the other terms are clearly identified."[34] Thus, the Business Park argues, the court was entitled to rely on the substance of the M-1 Amendments to aid in its interpretation of the court orders.

Consent orders are interpreted like contracts.[35] Other documents or agreements can be incorporated by reference "[w]here a contract is executed which refers to another instrument and makes the conditions of such other instrument a part

---

[32] Opening Br. at 32.

[33] *Id.*

[34] *Realty Growth Inv'rs v. Council of Unit Owners*, 453 A.2d 450, 454 (Del. 1982); *cf. Kerly v. Battaglia*, 1990 WL 199507, at *2 (Del. Super. Nov. 21, 1990) ("Furthermore, an express employment contract which makes reference to certain specific provisions of the personnel policy manual does not incorporate the policy manual in its entirety.").

[35] *Id.*; *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994) ("For the purposes of enforcement, a consent judgment is to be interpreted as a contract, to which the governing rules of contract interpretation apply.").

of it."[36]  When that occurs, "the two will be interpreted together as the agreement of the parties."[37]  But, "[a] mere reference in one agreement to another agreement, without more, does not incorporate the latter agreement into the former by reference."[38]  Rather, "[t]o incorporate one document into another, an explicit manifestation of intent is required."[39]  In addition, "when incorporated matter is referred to for a specific purpose only, it becomes a part of the contract for that purpose only, and should be treated as irrelevant for all other purposes."[40]

---

[36] *State v. Black*, 83 A.2d 678, 681 (Del. Super. 1951) (citation omitted); *see also Wilmington Sav. Fund Soc'y, F.S.B. v. Swanson*, 2016 WL 6948454, at *7 (Del. Super. Nov. 21, 2016).

[37] *Black*, 83 A.2d at 681 (citation omitted); *Star States Dev. Co. v. CLK, Inc.*, 1994 WL 233954, at *4 (Del. Super. May 10, 1994) ("Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by the reference as a part of the contract.").

[38] *Wolfson v. Supermarkets Gen. Holdings Corp.*, 2001 WL 85679, at *5 (Del. Ch. Jan. 23, 2001); *see also* 17A Am. Jur. 2d Contracts § 381 (2018) ("In order for an instrument to be incorporated into and become part of a contract, the instrument must actually be incorporated; it is not enough for the contract to merely mention the instrument, and the referring language in the contract must demonstrate the parties intended to incorporate all or part of the referenced instrument. Additionally, a reference in a contract to another instrument will incorporate the other instrument only to the extent indicated and for the specific purpose indicated.").

[39] *Wolfson*, 2001 WL 85679, at *5; *cf. Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 231 A.2d 450, 457 (Del. Ch. 1967), *aff'd*, 239 A.2d 629 (Del. 1968) (finding no incorporation by reference when the new agreement did "not show an intent to incorporate the details of the earlier agreement"); 11 WILLISTON ON CONTRACTS § 30:25 (4th ed. 2017) ("[I]n order to uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.").

[40] *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1272 n.33 (Del. 2017); *see also Guerini Stone Co. v. P.J. Carlin Constr. Co.*, 240 U.S. 264, 277 (1916) ("[A] reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified."); *Pauley Petroleum, Inc.*, 231 A.2d at 457 ("[O]ne of the well settled exceptions to this rule (of incorporation) is this: . . . an agreement will not be deemed to incorporate matter in some other instrument or writing except to the extent that the same is specifically set forth or identified by reference." (quoting *Black*, 83 A.2d at 681)).

14

The stipulated orders do not incorporate by reference the substance of Article 5A. Article 5A was referred to only as part of the Town's obligation to republish the 2005 ordinance with Article 5A—the "Town shall amend and republish the New Zoning Code to include Article 5A as unanimously passed on April 4, 2005."[41] The stipulated orders do not refer to or incorporate the substance of Article 5A. This "mere reference . . . without more" is insufficient to incorporate the substance of Article 5A into the stipulated orders.[42] Thus, the substance of Article 5A and its vested rights statements were "irrelevant for all other purposes"[43] and were not substantively incorporated into the stipulated orders.

## D.

### *Extrinsic Evidence*

The Superior Court also held that even if Article 5A was not incorporated by reference, the court could consider the Article as extrinsic evidence "of the circumstances surrounding the formation of the consent decrees."[44] The court recognized that "courts look to extrinsic evidence for interpretation only when

---

[41] App. to Opening Br. at 75, 77 (Stipulation & Orders of Dismissal).

[42] *Wolfson*, 2001 WL 85679, at *5.

[43] *Exelon Generation Acquisitions, LLC*, 176 A.3d at 1272 n.33; *see also Wolfson*, 2001 WL 85679, at *5 (finding that while the settlement agreement contained references to the merger agreement, the parties failed to make "an explicit manifestation of intent" to incorporate the article into the settlement agreement).

[44] *Town of Cheswold*, 163 A.3d at 721–22.

ambiguity exists,"[45] but did not identify any ambiguity in the stipulated orders. Using Article 5A as extrinsic evidence, the court concluded that "the circumstances surrounding the formation of the consent decrees confirms that the parties, and thereby the courts, intended to resolve the claims by recognizing [the Business Park's] vested rights."[46]

On appeal, the Town argues that the court erred because the stipulated orders were unambiguous and thus extrinsic evidence should not have been considered. The Business Park responds that the court could look to Article 5A because "reliance upon certain aids to construction is proper," including the "circumstances surrounding the formation of the consent order."[47]

While we have recognized that contracts should be "read in full and situated in the commercial context between the parties,"[48] the background facts cannot be used to alter the language chosen by the parties within the four corners of their agreement.[49] It is only when an ambiguity exists that the court should resort to

---

[45] *Id.* at 721 (citing *United States v. New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999); *Fox v. U.S. Dep't of Hous. & Urban Dev.*, 680 F.2d 315, 319 (3d Cir. 1982)).

[46] *Town of Cheswold*, 163 A.3d at 721.

[47] *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975).

[48] *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co.*, 166 A.3d 912, 926–27 (Del. 2017).

[49] *Id.*; *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) ("When interpreting a contract, the Court will give priority to the parties' intentions as reflected in the four corners of the agreement."); *see also United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) ("[T]he scope of a consent decree must be discerned within its four corners . . . .").

extrinsic evidence to discern the parties' intent.[50] Contractual language "is not rendered ambiguous simply because the parties in litigation differ concerning its meaning."[51] "Where no ambiguity exists, the contract will be interpreted according to the 'ordinary and usual meaning' of its terms."[52]

The language in the stipulated orders is unambiguous. The first provision states that the "Town hereby confirms that the entire [Business Park] property shall continue with M-1 Zoning and site plan/building permit procedures under the 1977 Zoning Code."[53] The second states that the "Town shall amend and republish the New Zoning Code to include Article 5A."[54] Neither the Superior Court nor the Business Park identified any language that was "fairly susceptible of different interpretations" or that "may have two or more different meanings."[55] Under the plain language of the stipulated orders, the parties intended for the Business Park to continue with its current zoning classification and the Town to amend its 2005

---

[50] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) ("Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it.").

[51] *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993); *New Jersey*, 194 F.3d at 430 ("In addressing the question of ambiguity, our focus remains on the contractual language itself, rather than on the parties' subjective understanding of the language.").

[52] *Twin City Fire Ins. Co.*, 840 A.2d at 628 (quoting *Rhone-Poulenc Basic Chems. Co.*, 616 A.2d at 1195).

[53] App. to Opening Br. at 75–78 (Stipulation & Orders of Dismissal).

[54] *Id.*

[55] *Rhone-Poulenc Basic Chems. Co.*, 616 A.2d at 1196; *cf. GMG Capital Invs., LLC*, 36 A.3d at 782 (finding that a contract provision was ambiguous when both parties offered a reasonable interpretation of the language at issue).

Ordinance to include Article 5A and process pending applications.[56] Although the Town agreed that the Business Park property would "continue" with the 1977 zoning classification as of 2005, that commitment was not expressly stated to bind the Town over a decade later for all time and under all circumstances. Because the stipulated orders are unambiguous, the Superior Court erred in looking to Article 5A as extrinsic evidence of the parties' intent.

## III.

The Town raised a narrow issue in its Petition—whether the stipulated orders prevent the Town from enacting new ordinances affecting the Business Park's property. In the stipulated orders, the Town agreed to specific obligations, but did not agree to immunize the Business Park property over a decade later from future legislative action. On remand, the Superior Court should enter a judgment in favor of the Town on its Petition.

The Town stated in its Petition that it might "enact ordinances, rules, and regulations relating to zoning, site plan, or building permit procedures for the M-1 Industrial zoned lands in the Central Delaware Business Park."[57] Until the Town enacts a particular ordinance, rule, or regulation, the parties and the court do not

---

[56] *Rhone-Poulenc Basic Chems. Co.*, 616 A.2d at 1196 ("The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.").

[57] Pet. Requesting an Order and Motion to Clarify Scope and/or for Relief from a Previous Court-Ordered Stipulation, ¶ 1.

18

know how it will affect the Business Park property. Thus, no further review is warranted until the dispute ripens into a justiciable controversy.

If the Town adopts an ordinance affecting the Business Park property, and the Business Park asserts a vested rights claim in response, the Business Park's claim should be decided by applying the balancing test in *In re 244.5 Acres of Land.*[58] The court should consider, among other factors it sees as important, "the nature, extent and degree of the public interest to be served by the ordinance amendment,"[59] "the nature, extent and degree of the developer's reliance on the state of the ordinance under which he has proceeded"—i.e., the developer's "good faith reliance on

---

[58] We disagree with the Superior Court that rights vest only once and thereafter are immune to legislative action. As this Court held in *Price*, "a statute may retroactively reach property rights which have vested and may create new obligations with respect thereto, provided that the statute is a valid exercise of police power." 320 A.2d at 340; *see also* 3 RATHKOPF'S THE LAW OF ZONING AND PLANNING § 38:28 (4th ed. 2018) ("As a general proposition, property owners and residents have no legal right to the continued existence of current zoning, either with respect to the zoning of nearby property or with respect to zoning of one's own property."); 83 Am. Jur. 2d Zoning and Planning § 508 (2d ed. 2018) ("[G]enerally a property owner has no vested right to have an existing zoning classification or an existing zoning ordinance continue unchanged if the municipality rationally exercises its police power and determines that a change in zoning is required for the well-being of the community.").

[59] *In re 244.5 Acres of Land*, 808 A.2d at 757–58; *Davidson v. Cty. of San Diego*, 56 Cal. Rptr. 2d 617, 618, 623 (Cal. Ct. App. 1996) ("[V]ested rights may be impaired by subsequent police power enactments necessary to protect public health or safety. . . . The appropriate inquiry is whether the new regulations imposed by the county on [the plaintiff's] project were 'sufficiently necessary to the public welfare to justify the impairment.'" (quoting *In re Marriage of Bouquet*, 546 P.2d 1371, 1376 (Cal. 1976))); *Shellburne, Inc.*, 224 A.2d at 253 (explaining that zoning legislation should be "progressive, not static" and "sufficiently flexible to adjust to changed conditions in the interest of the public welfare").

existing standards,"[60]—and "the effect of the pace of the development effort"[61]

because "delay may defeat a vested rights claim."[62]

---

[60] *In re 244.5 Acres of Land*, 808 A.2d at 758.

[61] *Salem Church (Del.) Assocs. v. New Castle Cty.*, 2006 WL 2873745, at *1 (Del. Ch. Oct. 6, 2006) (finding that delay is a factor to be considered when determining whether a property owner has a vested right in its zoning classification in light of a new ordinance).

[62] *Id.* at *11. Other factors a court may consider include: the ordinance's effects on public health and welfare—including safety, education, transportation, medical services, utilities, and environmental concerns; whether the developer incurred major expense or made material progress toward obtaining approval before the ordinance's enactment; any actions or statements made by municipality officials that the developer reasonably and substantially relied on; and whether the developer was on notice or had reason to anticipate the ordinance's enactment prior to incurring expenses on the project. *See In re Kent Cty. Adequate Pub. Facilities Ordinances Litig.*, 2009 WL 445386, at *4 (Del. Ch. Feb. 11, 2009); *Salem Church (Del.) Assocs.*, 2006 WL 2873745, at *10; *Lynch v. City of Rehoboth Beach*, 2005 WL 1074341, at *2 (Del. Ch. Apr. 21, 2005); 4 RATHKOPF'S THE LAW OF ZONING AND PLANNING § 70:26 (4th ed. 2018).