**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SELENA E. MOLINA
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: August 21, 2024
Date Submitted: May 1, 2024

Joseph S. Naylor, Esquire
Swartz Campbell LLC
300 Delaware Ave, Suite 1410
Wilmington, DE 19801

Chad J. Toms, Esquire
Quinn T. Griffith, Esquire
Whiteford, Taylor & Preston LLP
600 N. King St, Suite 300
Wilmington, DE 19801

Re: *Vortex Infrastructure Holdco LLC v. Casey Kane*,
C.A. No. 2023-0781-SEM

Dear Counsel:

Pending before me is the defendant's amended motion to dismiss under Court of Chancery Rules 12(b)(1) and 12(b)(3) for improper venue and *forum non conveniens*. For the reasons below, I find Harris County, Texas is the binding jurisdiction of choice in the parties' agreements, as interpreted herein. Because I find such forum selection clause unequivocally applies to the dispute before me, mandating dismissal without prejudice, I do not reach the defendant's alternative *forum non conveniens* argument. This is my final report.

## I.    BACKGROUND[1]

Through this action, the plaintiff, Vortex Infrastructure Holdco LLC (the "Plaintiff"), a Delaware limited liability company, seeks declaratory judgment that the defendant, Casey Kane (the "Defendant," with the Plaintiff, the "Parties"), a former employee of the Plaintiff, is required to sell all his remaining incentive units back to the Plaintiff due to his alleged breach of non-competition provisions in the Plaintiff's November 22, 2017 Amended and Restated Limited Liability Company Agreement (the "LLC Agreement").[2] I begin with a discussion of the relevant portions of the LLC Agreement and the related Incentive Unit Agreement, as defined herein, before turning to the factual predicate leading to this litigation.

---

[1] I take these facts largely from the complaint and documents integral thereto. Docket Item ("D.I.") 1. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) ("On a motion to dismiss, the Court may consider documents that are 'integral' to the complaint, but documents outside the pleadings may be considered only in 'particular instances and for carefully limited purposes.'"). Those integral documents include the full versions of the agreements at issue, which were submitted by the defendant. D.I. 17, Ex. 1–2. The defendant submitted additional documents which I reference and find appropriate for my consideration under Court of Chancery Rule 12(b)(3). *See Mack v. Rev Worldwide, Inc.*, 2020 WL 7774604, at *6 (Del. Ch. Dec. 30, 2020) (quoting *Sylebra Cap. P'rs Master Fund, Ltd. v. Perelman*, 2020 WL 5989473, at *9 (Del. Ch. Oct. 9, 2020)) (explaining that under Rule 12(b)(3), "the court is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset"). I do not, however, consider the challenged letter which contained a reference to Federal Rule of Evidence 408 and which I find irrelevant to the issues before me. D.I. 25.

[2] D.I. 17, Ex. 1.

### A. The Agreements

The Defendant is listed in the LLC Agreement, in Schedule 1, as a "Member" holding 10,425.38 "Incentive Units" in the Plaintiff.[3] Under the LLC Agreement, "Members" are subject to certain non-competition restrictions. Specifically, Article 11.1, titled "Right of Competition," provides, in pertinent part, that "Members" may not engage in competitive activities (as described therein) while a "Member" and for two years after they cease being a "Member."[4] Under Article 11.2, a "Member" who breaches Article 11.1 is in default and the Plaintiff's board may, "in its sole discretion[,]" require the "Defaulting Member" to sell all of their units under certain terms.[5]

The LLC Agreement contains numerous references to possible related incentive unit agreements. For example, Article 3.1(g) confirms each "Member's" understanding that units issued thereto are subject to the LLC Agreement's terms "and, with respect to any Incentive Units held thereby, the Incentive Unit Agreement

---

[3] *Id.* at Sch. 1. "In 2018, by unanimous written consent of the [Plaintiff]'s Board of Directors, the number of [the] Defendant's incentive units was corrected to a total of 104,253.81 units." D.I. 1, ¶11.

[4] D.I. 17, Ex. 1, Art. 11.1.

[5] *Id.* at Art. 11.2.

governing such Incentive Units."[6] Similarly in Article 4.2(d)(iii), the LLC

Agreement reflects the shared understanding that:

> Each Person to which the Company issues Incentive Units from time to time shall agree to be bound by this Agreement and shall enter into an Incentive Unit Agreement, if required by the Board, between the Company and such Person which may contain vesting, forfeiture, termination and transfer provisions, as determined by the Board. Holders of Incentive Units shall have no voting rights or rights of approval, veto or consent or similar rights over any actions of the Company.[7]

The Parties entered into the contemplated incentive unit agreement (the "Incentive

Unit Agreement," with the LLC Agreement, the "Agreements") contemporaneously

with the LLC Agreement on November 22, 2017.[8]

Therein, the Plaintiff granted incentive units to the Defendant, which the

Defendant acknowledged "are subject to the LLC Agreement."[9]  The Defendant

went further, agreeing "(a) to the terms and conditions of the LLC Agreement and

(b) that the Incentive Units shall be bound by the terms and conditions of such

agreement, including but not limited, to . . . the non-competition covenants set forth

in Article 11."[10] The Parties further agreed: "In the event of any conflict between the

---

[6] *Id.* at Art. 3.1(g).

[7] *Id.* at Art. 4.2(d)(iii).

[8] D.I. 17, Ex. 2.

[9] *Id.* at Art. 2.5.

[10] *Id.*

provisions of the LLC Agreement and [the Incentive Unit] Agreement, the provisions of [the Incentive Unit] Agreement shall govern."[11]

Relevant to this action, there is a seemingly disconnect between the forum selection provisions of the Agreements.[12] The LLC Agreement reflects that:

> any claim, suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement shall only be brought in the state or federal courts located in the States of Delaware or Texas and not in any other state or federal courts located in the United States of America.[13]

The LLC Agreement also provides a consent to jurisdiction and irrevocable waiver of any venue objection based on an inconvenient forum.[14] The Incentive Unit Agreement's forum selection provision is different. Therein, the Parties agreed that:

> any claim, suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, [the Incentive Unit] Agreement shall only be brought in the state or federal courts located in Harris County in the State of Texas and not in any other state or federal courts located in the United States of America.[15]

---

[11] *Id.*

[12] The Parties also briefed a potential disconnect between the default provisions in the LLC Agreement and the forfeiture provisions in the Incentive Unit Agreement; I decline to address these arguments, finding them largely irrelevant to the issues before me.

[13] D.I. 17, Ex. 1, Art.12.7.

[14] *Id.*

[15] D.I. 17, Ex. 2, Art. 3.4(a).

### B. The Factual Predicate

The Defendant was an employee of the Plaintiff since its formation in 2017.[16] But he resigned in early 2022.[17] The Plaintiff pleads that "[u]pon information and belief, shortly after his resignation from the Company, [the] Defendant began work for a direct competitor" of the Plaintiff.[18] Upon learning this information, the Plaintiff wrote to the Defendant, reminding him of the non-competition restrictions in the LLC Agreement.[19] The Plaintiff further pleads, "[u]pon information and belief," that the Defendant left the first "competitor" and, "in early 2023," began working for a "second competitor[.]"[20] The Plaintiff sent another letter to the Defendant, reminding him about the non-competition provisions in the LLC Agreement.[21]

Without any promise to cease competition, on February 7, 2023, the Plaintiff exercised its option under Article 11.2 of the LLC Agreement to require the Defendant to sell his units back to the Plaintiff at $0.00, the "Threshold Value" as

---

[16] D.I. 1 ¶ 7. The Defendant provides pipe inspection and rehabilitation services to restore aging sewer infrastructure. *Id.* ¶ 6.

[17] *Id.* ¶ 12.

[18] *Id.* ¶ 14.

[19] *Id.* ¶ 15.

[20] *Id.* ¶ 16.

[21] *Id.* ¶ 17.

defined in the Agreements.[22] Believing that the Defendant disputed the propriety of such exercise, the Plaintiff brought this action seeking declaratory relief on August 1, 2023.[23] On September 25, 2023, the Defendant moved to dismiss.[24] After the Parties completed briefing, I heard oral argument on May 1, 2024, at which time I took the motion under advisement.[25]

## II.    ANALYSIS

The Defendant seeks dismissal of this action based on the forum selection clause in the Incentive Unit Agreement or, alternatively, under the doctrine of *forum non conveniens*. The Defendant moved under both Court of Chancery Rule 12(b)(1) and 12(b)(3); I find Rule 12(b)(3) the correct lens.[26] Under Rule 12(b)(3), this Court

---

[22] *Id.* ¶ 19; D.I. 17, Ex. 1, Art. 4.2(d)(iii) ("Each series of Incentive Units shall have a "Threshold Value" assigned to it by the Board at the time of the creation of such series of Incentive Units.") (emphasis removed); D.I. 17, Ex. 2, Art. 2.1 ("Each Incentive Unit is hereby assigned a "Threshold Value" for purposes of the LLC Agreement equal to zero dollars ($0.00).").

[23] D.I. 1. After the Plaintiff filed this action, the Defendant sued the Plaintiff in Texas seeking (1) an award against the Plaintiff for alleged breach of the Incentive Unit Agreement, (2) a declaration that the Defendant is not bound by the competition provision in the LLC Agreement and that the Defendant's incentive units were not forfeited, and (4) additional related relief. D.I. 10 at 9.

[24] D.I. 7.

[25] *See* D.I. 10–21, 26–27.

[26] This Court has been receptive to analyzing forum selection clauses under Court of Chancery Rule 12(b)(1). But, as explained by Vice Chancellor Laster in *Gandhi-Kapoor v. Hone Capital, LLC*, "the proper motion for disputing forum invokes Rule 12(b)(3) and presents a defense of improper venue." 307 A.3d 328, 343 (Del. Ch. 2023), *aff'd*, 2024 WL 3575652 (Del. July 30, 2024). Rule 12(b)(1) may be invoked, as appropriate, to seek relief

is not the proper venue for the Parties' dispute, which I find is subject to the forum selection clause in the Incentive Unit Agreement. Although the Defendant's *forum non conveniens* arguments are also persuasive, I need not reach them and recommend this action be dismissed, without prejudice, based on the forum selection clause.

"Under Court of Chancery Rule 12(b)(3), the Court will grant a motion to dismiss for improper venue if there is an applicable forum selection clause where the parties use 'express language clearly indicating' that they may not bring an action in this Court."[27]  Here, I find the forum selection clause in the Incentive Unit Agreement applies and contains "express language clearly indicating" that this action may not be brought in this Court.

"When a contract contains a forum selection clause, this court will interpret the forum selection clause in accordance with the law chosen to govern the contract."[28] Here, there is no dispute that the Agreements reflect the Parties' choice

---

"later in the case." *Id.*  Here, the Defendant promptly moved for relief at the outset, and I find the Defendant's motion arises, properly, under Rule 12(b)(3).

[27] *Centene Corp. v. Accellion, Inc.*, 2022 WL 898206, at *5 (Del. Ch. Mar. 28, 2022) (cleaned up, citations omitted).

[28] *Ashall Homes Ltd. v. ROK Ent. Gp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010).

of Delaware law.[29] Thus, I begin with a few relevant principles of Delaware law on

contract construction and interpretation:

> In Delaware, the construction of contract language presents a question of law. The court's "task is to fulfill the parties' shared expectations at the time they contracted." The court starts with the text of the contract. When a contract's language is clear and unambiguous, the court will give effect to the plain meaning of the contract's terms and provisions. The contract is to be read as a whole, giving effect to each term and provision, "so as not to render any part of the contract mere surplusage."[30]

Read as a "whole" includes separately executed agreements incorporated by

reference, which happens "where a contract is executed which refers to another

instrument and makes the conditions of such other instrument a part of it. When that

occurs, the two will be interpreted together as the agreement of the parties."[31]

Here, I find the Agreements must be read together. The Agreements expressly

incorporate and reference each other, indicating the Parties' intent that the

Agreements will be interpreted together. To read the LLC Agreement alone, without

any reference to the Incentive Unit Agreement, which the Plaintiff invites me to do,

would be inappropriate. Rather, I must read the Agreements together and interpret

---

[29] *See* D.I. 17, Ex. 1, Art. 12.7 ("This Agreement is governed by and shall be construed in accordance with the Laws of the State of Delaware[.]"); D.I. 17, Ex. 2, Art. 3.4 (same).

[30] *Centene Corp.*, 2022 WL 898206, at *5 (citations omitted).

[31] *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 818–19 (Del. 2018) (cleaned up, citations omitted).

the forum selection clauses in each to give meaning to the Parties' "whole" agreement.[32]

I find the Incentive Unit Agreement clarifies, rather than conflicts with, the broader forum selection in the LLC Agreement. The LLC Agreement governs the Plaintiff's organization and management and reflects the agreed forum for disputes arising out of or in connection with the LLC Agreement as either Delaware or Texas. The Incentive Unit Agreement specifies that for actions in connection with the grant of incentive units to the Defendant the only available forum is Harris County, Texas. This can (and should) be read consistent with the LLC Agreement. Together the Agreements reflect the Parties' agreement that any actions arising out of, or in connection with, the Plaintiff's grant of incentive units to the Defendant would be brought solely and exclusively in Harris County, Texas. This is the only way to read the Agreements in harmony.

The Plaintiff argues that the LLC Agreement's forum selection clause governs because this action is not a dispute regarding the issuance or vesting of the Defendant's incentive units. I find that a far too narrow read of the Agreements. "Delaware courts recognize the phrases 'relating to' and 'arising out of' as

---

[32] *See Simon v. Navellier Series Fund*, 2000 WL 1597890, at *7 (Del. Ch. Oct. 19, 2000) (finding two agreements executed contemporaneously "must be viewed together and in their entirety when determining the scope and nature of" the parties' arrangements).

'paradigmatically broad terms.'"[33] This Court has also described the phrase "relating to" as one of the "far-reaching terms often used by lawyers when they wish to capture the broadest possible universe."[34] Here, the Parties used those broad terms in the Incentive Unit Agreement to mandate: "any claim, suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement shall only be brought in the state or federal courts located in Harris County in the State of Texas and not in any other state or federal courts located in the United States of America."[35]

This "arising out of" language also forestalls the Plaintiff's argument that "disputes under the Incentive Unit Agreement get litigated in Texas, while disputes related to incentive units under the LLC Agreement can be litigated in Delaware."[36] To interpret the Agreements as such would too narrowly construe the forum selection clause in the Incentive Unit Agreement. Again, it does not govern just disputes under the Incentive Unit Agreement but rather "any claim, suit, action or proceeding

---

[33] *City of Newark v. Donald M. Durkin Contr., Inc.*, 305 A.3d 674, 680 (Del. 2023) (citations omitted).

[34] *DeLucca v. KKAT Mgmt., LLC*, 2006 WL 224058, at *10 (Del. Ch. Jan. 23, 2006).

[35] D.I. 17, Ex. 2, Art. 3.4.

[36] D.I. 27 at 26:19–22.

seeking to enforce any provision of, or based on any matter arising out of or in connection with," the Incentive Unit Agreement.[37]

I further disagree with the Plaintiff's argument that a broad construction of the Incentive Unit Agreement's forum selection clause would "eviscerate" the LLC Agreement and the protections afforded thereunder.[38] Rather, this construction reads the Agreements, which were contemporaneously executed and expressly incorporate each other, in harmony to effectuate the Parties' intent as reflected therein.

The Parties anticipated, and explained how to address, the disconnect between the forum selection clauses in the Agreements. The Incentive Unit Agreement contains an express agreement that the Defendant's units shall be bound by the non-competition covenants in the LLC Agreement and immediately thereafter provides: "In the event of any conflict between the provisions of the LLC Agreement and [the Incentive Unit] Agreement, the provisions of [the Incentive Unit] Agreement shall govern."[39] Read together, under Delaware's construction principles, the Parties agreed that actions arising out of the Plaintiff's grant of incentive units to the Defendant, and the rights and obligations related thereto, may only be brought in

---

[37] D.I. 17, Ex. 2, Art. 3.4.

[38] D.I. 27 at 27:25–28:2.

[39] D.I. 17, Ex. 2, Art. 2.5.

Harris County, Texas (the forum selected in the Incentive Unit Agreement) despite the forum selection clause in the LLC Agreement.

This interpretation further complies with the specific-over-general rule of contract interpretation. "Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one."[40] Further, "[w]hen there is an inconsistency between general and specific provisions, the specific provisions ordinarily qualify the meaning of the general ones, due to the reasonable inference that specific provisions express more exactly what the parties intended."[41]

Here, the Parties executed the Agreements contemporaneously and the Agreements expressly incorporate each other. Yet they have distinct forum selection provisions, each of which uses the broad, sweeping language of "arising out of or in connection with." The Parties appear to have anticipated the likelihood that an action could, under this broad language, "arise out of or in connection with" both of the Agreements; such is apparent from their agreement to designate the Incentive Unit Agreement as controlling. But, even had they not, the Incentive Unit Agreement contains a more specific forum selection—Harris County, Texas—over the broader

---

[40] *DCV Hldgs., Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005).

[41] *Katell v. Morgan Stanley Gp., Inc.*, 1993 WL 205033, at *4 (Del. Ch. June 8, 1993) (citations omitted).

provision in the LLC Agreement: Delaware or Texas. The specific-over-general rule of contract interpretation, thus, favors the Incentive Unit Agreement and provides another reason for this Court to dismiss in favor of the expressly chosen forum.

The Plaintiff points me to *Lilis Energy, Inc. v. Blackwell*,[42] a decision from the New York Supreme Court, to argue otherwise. *Lilis Energy, Inc.* was decided under New York contract law, which provides that a court interpreting competing forum selection clauses in interrelated agreements must avoid an interpretation that renders one clause superfluous.[43] Arguably, Delaware follows a similar canon of construction, although the Plaintiff has failed to cite any Delaware case law in support. Nevertheless, my interpretation does not render the LLC Agreement's forum selection clause superfluous. Rather, it reads the two provisions in harmony, seeing the Incentive Unit Agreement's provision for what it is—a narrowing specifically for actions "arising from or in connection with" the grant of incentive units to the Defendant. To hold otherwise would treat the Incentive Unit Agreement's terms, expressly meant by the Parties to control in the event of a conflict, as surplusage.

---

[42] 2019 WL 2287957 (N.Y. Sup. Ct. May 29, 2019).

[43] *Id.* at *7–8 (first citing *Adar Bays, LLC v. Aim Expl., Inc.*, 251 F. Supp. 3d 704, 708 (S.D.N.Y. 2017); and then citing *MPEG LA, LLC v. Samsung Elecs. Co.*, 166 A.D.3d 13, 17 (1st Dep't 2018)).

The Agreements are interrelated, expressly incorporate each other, and reflect a forum selection clause mandating actions "arising out of or in connection with" the grant of incentive units to the Defendant be filed in Harris County, Texas. This action falls within that broad designation. The declaratory relief requested here—declaring that the Defendant is required to sell his incentive units back to the Plaintiff—even though couched under the LLC Agreement, necessarily and unquestionably implicates, and would not be assertable but for the rights provided to the Defendant through, the Incentive Unit Agreement.[44] Such relief may only be pursued in Harris County, Texas.[45]

## III. CONCLUSION

For these reasons, I find the Plaintiff is bound by its agreement to litigate this type of action solely in Harris County, Texas. Thus, this action should be dismissed,

---

[44] *Cf. Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155, 157 (Del. 2002) (explaining that the scope of an arbitration agreement required this Court to answer whether the claims at issue depended on the existence of the agreement in which mandatory arbitration arose; "the analysis must turn on the issue of whether the [instant] claims would be assertable had there been no [arbitration] agreement").

[45] Further, the Plaintiff has not argued that the forum selection clause in the Incentive Unit Agreement is unenforceable such that the presumption of validity would be overcome. *See Mack*, 2020 WL 7774604, at *6 (explaining "[t]o escape the reach of a forum selection clause on the grounds that it is unreasonable or unjust, the avoiding party 'bears a heavy burden . . . .'") (citations omitted).

without prejudice, under Court of Chancery Rule 12(b)(3) for improper venue.  This

is my final report, and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Magistrate in Chancery