# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LINDEN J. FELLERMAN, in his Capacity as the Stockholder's Representative for the former Stockholders of Secure Payment Systems, Inc., | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: 2024-0363-EMD |
| v. | ) ) ) | |
| COLLECTIONS ACQUISITION COMPANY, INC. | ) ) ) ) | |
| Defendant. | ) ) | |

Submitted: October 13, 2025
Decided: December 16, 2025
**Redacted: January 21, 2026[1]**

*Upon Plaintiff's Motion for Judgment on the Pleadings,*
**DENIED**

Joeseph L. Christensen, Esquire, Anne M. Steadman, Esquire, Christensen Law LLC, Wilmington, Delaware. *Attorneys for Plaintiff Linden J. Fellerman.*

James H.S. Levine, Esquire, Troutman Pepper Locke LLP, Wilmington, Delaware; Richard J. Zack, Esquire, Brian M. Nichilo, Esquire, Troutman Pepper Locke LLP, Philadelphia, Pennsylvania. *Attorneys for Defendant Collections Acquisition Company, Inc.*

**DAVIS, P.J.**

---

[1] The Court received a request from the parties to keep certain portions of the decision confidential to Del. Super. Civ. R. 5(g)(4). The parties seek confidential treatment only as to certain facts and not to any substantive portion of the decision. After review, the Court finds the parties' request complies with Del. Super. Civ. R. 5(g)(4) and is redacting portions of this decision as confidential.

# I. INTRODUCTION

This is a breach of contract action filed in the Delaware Court of Chancery and cross-designated to the Complex Commercial Litigation Division of the Superior Court.[2]  On April 4, 2024, Plaintiff Linden J. Fellerman, in his capacity as the Stockholders' Representative for the former stockholders of Secure Payment Systems, Inc. ("SPS"), commenced this action against Defendant Collections Acquisition Company, Inc. ("CAC").[3]  Mr. Fellerman claims that CAC breached its contractual obligation under the Stock Purchase and Sale Agreement ("PSA") to release the holdback of sale proceeds (the "Holdback Amount").  Moreover, Mr. Fellerman asserts that he is entitled to indemnification pursuant to the PSA.

Initially, CAC moved to dismiss Mr. Fellerman's Complaint.[4]  The Court denied that motion on November 13, 2024.[5]  On December 23, 2024, CAC filed its Answer to the Complaint (the "Answer").[6]  In the Answer, CAC denied the allegations that it breached its contractual obligations, and that Mr. Fellerman is entitled to indemnification under the PSA.  Further, CAC asserted counterclaims of fraud and indemnification.

Presently before the Court is Mr. Fellerman's Motion for Judgement on the Pleadings (the "Motion"), which was filed on April 30, 2025.[7]  CAC filed its opposition on June 18, 2025.[8]

The Court heard oral arguments on the Motion on October 13, 2025.[9]  At the conclusion of the hearing, the Court took the Motion under advisement.

---

[2] The Court of Chancery assigned the action to this Court on November 6, 2023, pursuant to the February 23, 2023 Cross-Designation Order under 8 *Del. C.* § 111.  *See* Cross-Designation Letter and Order (D.I. No. 5).
[3] D.I. No. 1.
[4] Defendant Collections Acquisition Company, Inc.'s Motion To Dismiss Plaintiff's Verified Complaint with Certificate Of Service (D.I. No. 7).
[5] Chancery Court Proceeding Sheet for Defendant's Motion to Dismiss, heard on November 13, 2024. Defendant's Motion to Dismiss has been DENIED for the reasons stated on the record (D.I. No. 19).
[6] D.I. No. 23.
[7] D.I. No. 36.
[8] D.I. No. 41.
[9] D.I. No. 49.

For the reasons stated below, the Court **DENIES** the Motion.

## II. BACKGROUND

### A. THE PARTIES

#### 1. *Plaintiff*

Mr. Fellerman is an individual domiciled in the State of Nevada.[10] Mr. Fellerman is the founder of SPS.[11] Mr. Fellerman served as President and CEO of SPS from its founding until CAC terminated his employment on May 3, 2022.[12] Under the PSA, Mr. Fellerman is authorized to act as an "agent, proxy and attorney in fact" on behalf of "the former stockholders of SPS (the "Stockholders")."[13]

#### 2. *Defendant*

CAC is an Ohio corporation with its principal place of business in Ohio.[14] CAC is registered in Delaware as a foreign corporation.[15] CAC is a wholly owned subsidiary of Payliance, Inc. ("Payliance") and was created to acquire SPS.[16]

### B. RELEVANT NON-PARTIES

Payliance is a "payment processing company offering payment, verification, and recovery services."[17] Payliance is the parent company of CAC.[18] SPS is a company that provided "payment processing and information services" to customers.[19]

---

[10] Verified Compl. ("Compl.") (D.I. No. 1) ¶ 12.
[11] *Id.* ¶ 17.
[12] *Id.* ¶ 19.
[13] *See id.* ¶ 12.
[14] *Id.* ¶ 13.
[15] *Id.*
[16] *Id.* ¶ 21.
[17] *Id.* ¶ 20.
[18] *See id.* ¶ 21.
[19] *Id.* ¶ 11.

## C. NATURE OF THE DISPUTE

### 1. *Negotiations to Acquire SPS*

In 2020, Payliance began negotiating with SPS to acquire SPS.[20] On June 30, 2021, SPS and Payliance executed an initial letter of intent (the "Original LOI") regarding Payliance's proposed acquisition of SPS.[21] The Original LOI specified a proposed total enterprise value of **[REDACTED]**.[22] CAC would retain the holdback which would accrue interest at a rate of three percent per annum.[23]

On August 10, 2021, SPS shut down two of its largest cloud storage clients due to the clients' unresponsive nature.[24] On August 20, 2021, SPS received notice that the Department of Justice ("DOJ") "obtained a temporary restraining order in the matter of *USA v. Internet Transaction Services, Inc., et al.*, No. 2:21-cv-6582-JFW(KSx) (C.D. Cal.) (the "Civil Action")."[25] The Civil Action is a civil enforcement action brought

> against numerous individuals and entities, including some of SPS's merchant clients, alleging they had 'stolen millions of dollars' in a multi-year and 'ongoing bank and wire fraud scheme' where, among other actions, the defendants used 'shell entities to charge unauthorized debts against victims' bank accounts.'[26]

The temporary restraining order resulted in the freezing of assets of certain SPS clients.[27] Mr. Fellerman informed CAC of the development, but "portrayed SPS as an unknowing victim…and denied any culpability, including any participation on his part or SPS's part."[28]

---

[20] *Id.* ¶ 23.
[21] *See* i*d.* ¶ 23; *see also* Compl., Ex. B.
[22] *Id.* ¶ 24.
[23] *Id.*
[24] *See id.* ¶ 25.
[25] *Id.* ¶ 1.
[26] Defendant Collections Acquisition Company, Inc.'s Answer, Affirmative Defenses, And Counterclaims ("Answer") (D.I. No. 23) at 51.
[27] Compl. ¶ 1.
[28] Answer at 51-52.

After issuance of the temporary restraining order, SPS and Payliance executed a revised letter of intent (the "Revised LOI") on November 12, 2021.[29] The Revised LOI specified a total enterprise value of **[REDACTED]**.[30] The holdback was to be held by CAC and accrue at an interest rate of three percent per annum.[31] On January 3, 2022, SPS and CAC entered into the PSA based upon the terms contained in the Revised LOI.[32] SPS and CAC closed the transaction on January 13, 2022.[33]

### 2. *The PSA*

Under the PSA, the Stockholders agreed to sell the entirety of their interest to CAC for a total of **[REDACTED]** (the "Purchase Amount").[34] The PSA also included a provision that CAC would retain **[REDACTED]** of the Purchase Amount as the Holdback Amount for two years to secure Mr. Fellerman's and the Stockholders' indemnification obligations.[35]

#### i. Indemnification Obligations

PSA Section 7(b)(ii) sets forth the Stockholders' indemnification obligations.[36] In relevant part, Section 7(b)(ii) states that the Stockholders are required to indemnify CAC against any Loss resulting from:

> (A) the breach or alleged breach of any representation or warranty set forth in Section 5, [and]
> (B) the breach or alleged breach by such Stockholder of any covenant or agreement made by such Stockholder contained in this Agreement or any document delivered by or on behalf of such Stockholder at or prior to closing…[37]

---

[29] Compl. ¶ 27.
[30] *Id.* ¶ 28.
[31] *Id.*
[32] *See id.* ¶¶ 31-32.
[33] *See id.* ¶ 51.
[34] *See id.* ¶ 34; *see also* Compl. Ex. A, § 1(a).
[35] *Id.* ¶ 35; *see also* Compl. Ex. A, § 7, App. A.
[36] *See id.* ¶ 37.
[37] *Id.*; *see also* Compl. Ex. A, § 7(b)(ii).

PSA Section 7(b)(i) enumerates Mr. Fellerman's indemnification obligations. Section 7(b)(i) states that Mr. Fellerman is obligated to indemnify CAC against any 'Losses' CAC may suffer resulting from:

> (A) the breach or alleged breach of any representation or warranty set forth in Section 4, or
> (B) the breach or alleged breach by [Mr. Fellerman] of any covenant or agreement made by [Mr. Fellerman] contained in this Agreement or in any agreement, document, instrument, or certificate contemplated by this Agreement…[38]

PSA Section 7(b)(iii) describes CAC's indemnification obligations. Section 7(b)(iii) provides:

> [CAC] shall indemnify and hold harmless each Stockholder against any Losses which it may suffer, sustain or become subject to as the result of (A) the breach or alleged breach by [CAC] of any representation or warranty set forth in Section 6, or (B) the breach or alleged breach by [CAC] of any covenant or agreement contained in this Agreement or any document delivered by or on behalf of [CAC] at or prior to the Closing (provided that this clause (iii) shall not derogate from [CAC's] rights or recoveries pursuant to Sections 7(b)(i) or 7(b)(ii)).[39]

The term "**Loss**" is defined in the PSA as:

> any claim, loss, Liability, deficiency, damage (whether direct, indirect, incidental, special or consequential and including lost profits, business interruptions and diminution in value based on a multiple of earnings or similar financial measure), Tax or expense, including reasonable legal expenses and costs associated therewith (other than punitive or exemplary damages, unless, in each such case, such damages are incurred as a result of a third party claim).[40]

The term "**Liability**" is defined separately in the PSA as:

> any obligation, deficiency or liability of any kind or nature whatsoever, whether asserted or unasserted, absolute or contingent, known or unknown, accrued or unaccrued, liquidated or unliquidated, and whether due or to become due and regardless of when asserted.[41]

---

[38] *Id.* ¶ 39; *see also* Compl. Ex. A, § 7(b)(i).
[39] Compl. Ex. A., § 7(b)(iii).
[40] *Id.* ¶ 40; *see also* Compl. Ex. A, § 7(b)(i).
[41] *Id.* ¶ 41; *see also* Compl. Ex. A, App. A.

### ii. Representations and Warranties

The PSA also includes certain Representations and Warranties.[42] Under PSA Section 4(h), SPS represented and warranted that "[SPS] has complied within the past three (3) years, and is in compliance with, in each case, in all material respects, all applicable Laws applicable to [SPS] … and is not aware of any allegation of non-compliance with any such law."[43]

Additionally, under PSA Section 4 (v)(i), SPS represented and warranted that:

> [d]uring the past five (5) years, none of [SPS] nor any of its equityholders (in connection with or relating to the business of [SPS]), its officers, directors or employees has, and to the Knowledge of [SPS], no agents or other Persons, while acting for or on behalf of [SPS] have, directly or indirectly, violated any provision of the U.S. Foreign Corrupt Practices Act of 1977 (as amended) or any other anti-corruption, anti-money laundering or anti bribery Law (collectively, the "Anti-Corruption Laws"). [SPS] does not have, and has not had, any direct or indirect business or dealings in or with any Sanctioned Country, or with or for the benefit of any Sanctioned Person.[44]

The PSA provided that "[Mr.] Fellerman is obligated to indemnify CAC against any Loss incurred by CAC if [the representation and warranty contained in Section 4 (v)(i)] is violated."[45]

### iii. Notice Requirements

The PSA additionally describes the manner in which a party seeking indemnification must notify the indemnifying party of a claim.[46] PSA Section 7(b)(vi) states that a party making an indemnification claim under Section 7(b):

> [m]ust give the indemnifying Party (the "Indemnifying Party") written notice of such claim describing such claim and the nature and amount of the Loss, to the extent that the nature and amount thereof are determinable at such time (a "Claim Notice") within forty five (45) days after the Indemnified Party receives notice from a third party with respect to any matter which may give rise to a claim for indemnification against the Indemnifying Party (a "Third Party Claim") or otherwise discovers the Liability, obligation or facts giving rise to such claim for

---

[42] *See id.* ¶ 44.
[43] Compl. Ex. A, § 4(h).
[44] Compl. ¶ 44; *see also* Compl. Ex. A, § 4(v)(i).
[45] *Id.* ¶ 45.
[46] *See id.* ¶ 46.

indemnification…. The Indemnified Party shall cooperate with the Indemnifying Party in all matters arising under this Section 7(b).[47]

However, the PSA does not provide for indefinite indemnification.[48] PSA Section 7(a) states that:

[n]o Party shall be entitled to recover for any Loss arising from or relating to a breach or alleged breach of representations and warranties set forth in Sections 4, 5, or 6, unless written notice thereof is delivered to the other Parties on or prior to the Applicable Limitation Date. For purposes of this Agreement, the term "Applicable Limitation Date" shall be the date that is twenty-four (24) months after the Closing Date….[49]

Notwithstanding Section 7(a), the "Applicable Limitation Date[50]" is subject to certain exceptions.[51] Section 7(a) further provides that:

[i]n the event that (A) any breach or alleged breach of any representation or warranty by [SPS] or a Stockholder results from any action or inaction of the [SPS] or the Stockholders that constitutes fraud, intentional misrepresentation or willful misconduct or (B) any breach or alleged breach of any representation or warranty by [CAC] results from any action or inaction of [CAC] that constitutes fraud, intentional misrepresentation or willful misconduct, such representation or warranty shall survive the Closing and the consummation of the transactions contemplated hereby (regardless of any investigation by or on behalf of the damaged Party or the knowledge of any Party) and shall continue in full force and effect without any time limitation with respect to such breach or alleged breach.[52]

### iv. The Holdback Amount and Release Dates

The PSA requires the Holdback Amount to be paid in two tranches on the First Release Date and the Second Release Date.[53] PSA Section 7(b)(xii) states:

[o]n the date that is twelve (12) months following the Closing Date (the "First Release Date"), or if such date is not a business day, the following business day, [CAC] shall pay to each Stockholder such Stockholder's Purchase Price Percentage of **[REDACTED]** of the Holdback Amount that exceeds the sum of (I) all amounts

---

[47] *Id*.; *see also* Compl. Ex. A, § 7(b)(vi).
[48] *See* Compl. Ex. A, § 7(a).
[49] Compl. ¶¶ 48-49; *see also* Compl. Ex. A, § 7(a).
[50] The "Applicable Limitation Date" fell on January 16, 2024. January 13, 2024 (the twenty-four-month anniversary of the Closing Date) was a Saturday. Monday, January 15, 2024, was a federal holiday.
[51] Compl. ¶ 50.
[52] Compl. Ex. A, § 7(a).
[53] Compl. ¶ 52.

theretofore distributed or disbursed to the Buyer Group pursuant to this Section 7 and (II) the aggregate amount of Losses specified in any then unresolved good faith indemnification claims made by the Buyer Group pursuant to this Section 7. On the date that is twenty-four (24) months following the Closing Date (the "Second Release Date"), or if such date is not a business day, the following business day, [CAC] shall pay to each Stockholder such Stockholder's Purchase Price Percentage of the Holdback Amount that exceeds the sum of (I) all amounts theretofore distributed or disbursed to Stockholders pursuant to the foregoing sentence, (II) all amounts theretofore distributed or disbursed to the Buyer Group pursuant to this Section 7 and (III) the aggregate amount of Losses specified in any then unresolved good faith indemnification claims made by the Buyer Group pursuant to this Section 7. To the extent that any amount has been reserved and withheld from distribution from the Holdback Amount on the Second Release Date on account of an unresolved claim for indemnification and, subsequent to the Second Release Date, such claim is resolved, [CAC] shall immediately release (x) to the Buyer Group the amount of Losses, if any, due in respect of such claim as finally determined and (y) to each Stockholder such Stockholder's Purchase Price Percentage of an amount equal to the excess, if any, of the amount theretofore reserved and withheld from distribution in respect to such claim over the payment, if any, made pursuant to the foregoing clause (x). Notwithstanding anything to the contrary contained in this Agreement, interest shall accrue at an annual rate of 3% per year and shall become part of and be included in the Holdback Amount on the portion that is unpaid until it is paid.[54][55]

### 3. *Post-Closing Developments*

On February 22, 2022, the court-appointed Receiver in the Civil Action threatened litigation against Mr. Fellerman and SPS for **[REDACTED]**.[56] The Receiver presented, in relevant part, evidence that **[REDACTED]**.[57] **[REDACTED]**.[58]

In April 2022, without any admission of liability, Mr. Fellerman "personally executed a settlement agreement with the Receiver settling claims against Mr. Fellerman and SPS for $4,200,000."[59] CAC paid $600,000 as part of the settlement agreement.[60]

---

[54] Compl. Ex. A, § 7(b)(xii).
[55] The "Second Release Date" fell on January 16, 2024. January 13, 2024 (the twenty-four-month anniversary of the Closing Date) was a Saturday. Monday, January 15, 2024, was a federal holiday.
[56] Answer at 53; *see also* Answer, Ex. 1.
[57] *See id.*
[58] *See id.*
[59] *See id.* at 54.
[60] *See id.*

However, on April 27, 2023, Mr. Fellerman and SPS's former merchant clients were criminally indicted on multiple federal charges of fraud and racketeering in a case captioned *United States v. Linden J. Fellerman, et al.*, No. 2:23-cr-200 (C.D. Cal) (the "Criminal Action").[61] In the Criminal Action, a federal grand jury found that Mr. Fellerman and his co-conspirators were "members and associates of a criminal" enterprise that had, for nearly seven years, "engaged in, among other things, mail, wire, and bank fraud; identity theft; access device fraud; and money laundering."[62] Mr. Fellerman is currently awaiting trial in the Criminal Action.[63]

On May 3, 2022, Payliance terminated Mr. Fellerman's employment with SPS.[64]

### 4. *Indemnification Claims and CAC's Subsequent Withholding of the Holdback Amount*

Due to CAC's **[REDACTED]** settlement payment in the Civil Action, CAC asserted an indemnification claim (the "First Claim") against Mr. Fellerman pursuant to PSA Section 7(b)(i) in April 2022.[65] Mr. Fellerman agreed he was liable and paid the First Claim.[66] The First Claim is not in dispute in the instant action.[67] As a result of CAC's settlement payment, the remaining Holdback Amount was reduced to **[REDACTED]** (the "Remaining Amount").[68] Further, CAC did not release any of the Holdback Amount on the First Release Date because the **[REDACTED]** exceeded the maximum amount then payable from the Holdback Amount.[69]

---

[61] *Id.*
[62] *Id.*; *see also* Answer Ex. 2 ¶¶ 1, 8.
[63] *Id.* at 57.
[64] Compl. ¶ 19.
[65] *See* Answer at 56.
[66] *Id.*
[67] *Id.*
[68] Compl. ¶ 77.
[69] *See id.* at ¶ 88.

Subsequent to the issuance of the indictment in the Criminal Action, CAC asserted a second indemnification claim (the "Second Claim") against Mr. Fellerman for **[REDACTED]** pursuant to PSA Section 7(b)(i) on July 20, 2023.[70] The Second Claim sought indemnity for "Losses related to review and analysis of the DOJ's subpoena, indi[ct]ment and other related inquiries."[71] "CAC also reserved 'all rights including but not limited to its right to identify additional Losses relating to the claims identified above [resulting from the criminal action] and to seek full satisfaction of the remaining amount of the Losses identified in this Claim Notice.'"[72] Mr. Fellerman responded to the Second Claim and contended that claim did not provide sufficient information to make a determination as to whether a Loss had occurred under the PSA.[73]

On January 16, 2024, the Remaining Amount became due pursuant to the Second Release Date.[74] However, CAC did not release the Remaining Amount.[75]

On February 12, 2024, CAC asserted a third indemnification claim (the "Third Claim") against Mr. Fellerman for **[REDACTED]** (the "Undisputed Amount").[76][77] In the Third Claim, CAC stated that:

> [It] has suffered Losses related to, among other things: (a) your criminal prosecution in United States v. Linden J. Fellerman . . . and the related proceedings (collectively, "the Prosecution"); and (b) other damages attributable to your conduct underlying the Prosecution, including Losses, direct, indirect, incidental, special or consequential and including lost profits, business interruptions and diminution in value based on a multiple of earnings or similar financial measure, including reasonable legal expenses and costs associated therewith the losses.

---

[70] *See* Answer at 56.
[71] *Id.*
[72] *Id.*
[73] Compl. ¶ 91.
[74] *Supra*, n. 45.
[75] Compl. ¶ 95.
[76] Mr. Fellerman refers to this amount as the "Undisputed Amount" throughout his briefs. For clarity purposes, the same language is used throughout this opinion. The "Undisputed Amount" constitutes the Remaining Amount **[REDACTED]**.
[77] *See* Answer at 56.

[CAC] understand[s] that the Prosecution is ongoing, that no trial date has been set, and that the Prosecution involves your actions while employed at [SPS]. Because of the ongoing nature of these matters and because they continue to cause Losses to [CAC], [it is] unable to ascertain the full extent of the Losses at this time. . . . [and will therefore] retain the Holdback Amount in its entirety until it is able to ascertain the full amount of the Losses[.][78]

To date, Mr. Fellerman has not paid CAC for the Second and Third Claims and CAC has not released the Remaining Amount.[79]

### D. PROCEDURAL POSTURE

On April 4, 2024, Mr. Fellerman commenced the present action asserting claims of breach of contract pursuant to PSA Section 7(b)(xii) and for indemnification under PSA Section 7(b)(iii).[80] On the breach of contract claim, Mr. Fellerman asserts that CAC's failure to release the Remaining Amount as of the Second Release Date constitutes a breach of CAC's obligations under the PSA.[81] For the indemnification claim, Mr. Fellerman maintains that CAC's purported breach of the PSA "triggers CAC's indemnity obligation to [Mr. Fellerman] under Section 7(b)(iii)."[82]

On December 23, 2024, CAC filed the Answer and denied the claims asserted in the Complaint.[83] Moreover, CAC asserted counterclaims for fraud and indemnification.[84] CAC alleges that Mr. Fellerman committed fraud in relation to the negotiation and subsequent execution of the PSA.[85] CAC argues that Mr. Fellerman's false statements, as those statements relate to the representation and warranties section of the PSA, triggered Mr. Fellerman's

---

[78] *Id.* at 56-57.
[79] *See* Compl. ¶ 95; *See also* Answer at 25.
[80] *See* Compl. ¶¶ 32-37.
[81] *See id.* ¶ 142.
[82] *Id.* ¶ 151.
[83] *See* Answer at 46-48.
[84] *See id.* at 57-60.
[85] *See id.* at 57.

indemnification obligation under PSA Section 7(b)(i).[86] CAC contends that that Mr. Fellerman's refusal to pay CAC for the Second Claim and Third Claim constitutes a breach of Mr. Fellerman's indemnification obligation under the PSA.[87]

On April 30, 2025, Mr. Fellerman filed the Motion. On June 18, 2025, CAC filed its response to the Motion. On July 15, 2025, Mr. Fellerman filed his reply in further support of the Motion. The Court heard oral arguments on the Motion on October 13, 2025, at which time the matter was taken under advisement.

### III. PARTIES' CONTENTIONS

#### A. MR. FELLERMAN

First, Mr. Fellerman argues that CAC has not made a claim on the Undisputed Amount, which must be released immediately.[88] Mr. Fellerman asserts that the mandatory language contained in PSA Section 7(b)(xii) requires the release of the Remaining Amount.[89] In support, Mr. Fellerman maintains that (i) the Third Claim is untimely;[90] (ii) the Third Claim fails to provide reasonable notice of what CAC is seeking indemnification for;[91] and (iii) the Third Claim is "forward-looking" and thus, not contemplated by the PSA or permissible under Delaware law.[92]

Mr. Fellerman's second argument is related to the first argument. Mr. Fellerman alleges that the Second Claim is insufficient under the terms of the PSA and, as such, CAC is not entitled to retain the amount asserted in the Second Claim.[93] Specifically, Mr. Fellerman

---

[86] *See id*. at 59.
[87] *See id*. at 59-60.
[88] Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mot.") (D.I. No. 36) at 12.
[89] *See id.*
[90] *Id*. at 13.
[91] *Id*. at 16.
[92] *Id*. at 17.
[93] *Id.* at 21.

maintains that the Second Claim "is not a proper claim because it fails to give reasonable notice of the Losses for which CAC seeks indemnification."[94]

Third, Mr. Fellerman contends that CAC has not stated a claim for fraud.[95] In support, Mr. Fellerman maintains that (i) the fraud claim is a "clear example of bootstrapping;"[96] and (ii) the damages pled could not have been caused by the allegedly fraudulent statement.[97]

Fourth, Mr. Fellerman argues that CAC has not stated a claim for indemnification and that any such claim is unripe.[98]

Fifth, Mr. Fellerman claims that he is entitled to attorney's fees and expenses under the PSA as the prevailing party in this action.[99]

## B. CAC

CAC argues that CAC has valid indemnifiable claims because of Mr. Fellerman's fraudulent conduct.[100] Specifically, CAC maintains that it has complied with all requirements for making indemnification claims under the PSA.[101]

Next, CAC asserts that Mr. Fellerman is liable to CAC for his fraudulent conduct.[102] CAC contends that it has alleged sufficient facts demonstrating that Mr. Fellerman engaged in fraud in relation to the negotiations and execution of the PSA.[103]

---

[94] *Id.*
[95] *Id*. at 22.
[96] *Id.*
[97] *Id*. at 24.
[98] *Id*. at 25.
[99] *Id*. at 27.
[100] *See* Defendant's Answering Brief in Response to Plaintiff's Motion for Judgment on the Pleadings ("Def. Opp'n") (D.I. No. 41) at 12-13.
[101] *See id*. at 18.
[102] *Id.*
[103] *See id*. at 22.

CAC then explains that Fellerman is not entitled to the Holdback Amount given CAC's indemnification and fraud claims.[104]  CAC maintains that its timely and adequately pled claims for indemnification and fraud establish that CAC has not breached the PSA by failing to release the Remaining Amount.[105]

## IV.    STANDARD OF REVIEW

Under Chancery Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[106]  The Court will grant a motion for judgment on the pleadings "only when no material issue of fact exists and the movant is entitled to judgment as a matter of law."[107]  "[I]n making this assessment, the Court 'is required to view the facts pleaded and the inferences to be drawn from such facts in [the] light most favorable to the non-moving party[;]' and must consider 'not only the complaint or counterclaims, but also the answer, affirmative defenses, and any documents integral thereto[.]'"[108]

## V.    DISCUSSION

### A.  MR. FELLERMAN'S CLAIMS

Under Delaware law, to establish a breach of contract claim, a party must prove (i) the existence of a contract; (ii) the breach of an obligation imposed by the contract; and (iii) damages that the plaintiff suffered as a result of the breach.[109]  Delaware courts follow the objective theory of contracts, giving words "their plain meaning unless it appears that the parties intended

---

[104] *Id.*

[105] *See id.*

[106] Ct. Ch. R. 12(c).

[107] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993) (citing *Warner Communications v. Chris-Craft Industries, Inc.*, 583 A.2d 962, 965 (Del. Ch. Sept. 7, 1989))

[108] *Matter of JCM 2001 Trust for Grandchildren FBO Robert C. Beyer*, 2025 WL 750229 at *2 (Del. Ch. Mar. 7, 2025) (citation omitted).

[109] *Neurvana Medical, LLC v. Balt USA, LLC*, 2020 WL 949917, at *15 (Del. Ch. Feb. 27, 2020) (citation omitted).

a special meaning."[110]  Additionally, when a plaintiff is seeking specific performance, the plaintiff is required to "demonstrate its entitlement to specific performance by clear and convincing evidence."[111]

Mr. Fellerman argues that CAC's failure to release the Remaining Amount on January 16, 2024, constitutes a breach of the PSA.[112]  Simply put, Mr. Fellerman's position appears to be that, because both the Second Claim and Third Claim purportedly fail, CAC was not justified in failing to release the Remaining Amount.

Conversely, CAC asserts that Second and Third Claims were adequate under the PSA.[113]  Thus, CAC maintains that it was entitled to retain the Remaining Amount and that its failure to release the Remaining Amount does not constitute a breach of the PSA.[114][115]

### 1. A material issue of fact exists as to whether CAC breached the PSA by failing to release the amount asserted in the Second Claim.

#### i. Sufficiency of the Second Claim

Mr. Fellerman alleges that the Second Claim is insufficient under the terms of the PSA and, as such, CAC is not entitled to retain the amount asserted in the Second Claim.[116]  Specifically, Mr. Fellerman maintains that the Second Claim "is not a proper claim because it fails to give reasonable notice of the Losses for which CAC seeks indemnification."[117]  Thus, Mr. Fellerman claims that, because the Second Claim is insufficient, the **[REDACTED]** claimed should have been released as part of the Remainder Amount.[118]

---

[110] *Id.*
[111] *In re IBP S'Holders Litig.*, 789 A.2d 14, 52 (Del. Ch. June 18, 2001).
[112] *See* Pl. Mot. at 1.
[113] *See* Def. Opp'n at 22.
[114] *See id.*
[115] The Second Claim and the Third Claim will be analyzed separately.
[116] *See* Pl. Mot. at 21.
[117] *Id.*
[118] *See id.* at 22.

CAC asserts that the Second Claim is sufficient under the terms of the PSA and, thus, CAC is entitled to retain the amount asserted in the Second Claim.[119]  CAC's position is that it has "provided sufficient detail to support its claims" pursuant to PSA Section 7(b)(vi).[120]  In the Second Claim, CAC states that it had incurred **[REDACTED]** in costs for "[l]osses related to review and analysis of the DOJ's subpoena, indi[ct]ment and other related inquires" in the Criminal Action.[121]

In response, Mr. Fellerman maintains that "CAC's barebones recitation does not provide reasonable notice."[122]  Although admitting that the PSA "does not spell out a specific level of detail necessary," Mr. Fellerman asserts that "the detail must still be reasonable."[123]  In support of this argument, Mr. Fellerman relies upon a proposition set forth in *Liberty Property Ltd. Partnership v. 25 Massachusetts Ave. Property LLC.*[124]  Mr. Fellerman asserts that the implied covenant of good faith and fair dealing "dictates that issues not specifically addressed in a contract will be addressed in accordance with standards of 'decency, fairness or reasonableness.'"[125]

Here, PSA Section 7(b)(vi) provides how a party seeking indemnification must notify the indemnifying party of a claim.  Section 7(b)(vi), in relevant part, states that a party seeking indemnification "must give the indemnifying Party (the "Indemnifying Party") written notice of such claim describing such claim and the nature and amount of the Loss, to the extent that the nature and amount thereof are determinable at such time…."[126]

---

[119] *See* Def. Opp'n at 14-18.
[120] *Id*. at 15.
[121] *Id*. at 9.
[122] Pl. Mot. at 21; *see also* Plaintiff's Reply Brief in Further Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Reply") (D.I. No. 45) at 22.
[123] *Id*.
[124] *See id.*
[125] *Id*.
[126] Compl. Ex. A, § 7(b)(vi).

As a preliminary matter, Mr. Fellerman is correct in his admission that Section 7(b)(vi) does not describe the level of detail necessary to provide notice for an indemnification claim under the PSA. Thus, Mr. Fellerman's argument that the implied covenant of good faith and fair dealing requires reasonable notice to be provided is applicable.

Notwithstanding, a material issue of fact exists as to whether the Second Claim provided reasonable detail. The Second Claim, on its face, appears to have complied with Section 7(b)(vi)'s notice requirement. CAC's assertion that it has incurred **[REDACTED]** in costs provides Mr. Fellerman with notice of the *amount* of the Loss. Likewise, CAC's allegation that the Loss arises from the "review and analysis" of documents related to the Criminal Action provides Mr. Fellerman with notice of the *nature* of the loss.

However, although the Second Claim seemingly complies with Section 7(b)(vi)'s notice requirement, the Second Claim appears somewhat vague. In the Second Claim, CAC did not provide a computation as to how CAC arrived at the **[REDACTED]** amount. Similarly, CAC failed to provide any details concerning the review and analysis of documents related to the Criminal Action.

Taking CAC's apparent compliance with Section 7(b)(vi) in conjunction with the vague nature of the Second Claim, a material issue of fact exists as to whether CAC provided reasonable notice regarding the Second Claim. Reasonableness "is a question of fact" that is ordinarily "determined by the finder of fact."[127] Because the Second Claim seemingly complies with Section 7(b)(vi), the Court is unable to conclude that the Second Claim failed to provide Mr. Fellerman with "reasonable" notice as a matter of law.

---

[127] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1206 (Del. 1993) (citation omitted).

### ii. CAC's Failure to Release the Amount Claimed in the Second Claim on the Second Release Date

Mr. Fellerman asserts that CAC "should have released the [amount claimed in the Second Claim] on the Second Release Date."[128] Mr. Fellerman relies upon PSA Section 7(b)(xii). As relevant here, Section 7(b)(xii) states:

> [o]n the date that is twenty-four (24) months following the Closing Date (the "Second Release Date"), or if such date is not a business day, the following business day, [CAC] *shall pay* to each Stockholder such Stockholder's Purchase Price Percentage of the Holdback Amount that exceeds the sum of (I) all amounts theretofore distributed or disbursed to Stockholders pursuant to the foregoing sentence, (II) all amounts theretofore distributed or disbursed to the Buyer Group pursuant to this Section 7 and (III) the aggregate amount of Losses specified in any then unresolved good faith indemnification claims made by the Buyer Group pursuant to this Section 7.[129]

CAC claims that, because the Second Claim is valid and timely asserted, it is "entitled to retain" the amount claimed in the Second Claim.[130]

A plain reading of the contractual language advanced by Mr. Fellerman would seem to indicate that, even if the Second Claim is valid and timely, CAC was not entitled to retain the amount asserted in the Second Claim past the Second Release Date. Specifically, Section 7(b)(xii) states that, on the Second Release Date, CAC "*shall pay* to [Mr. Fellerman] … the aggregate amount of Losses specified in any then *unresolved* good faith indemnification claims made by [CAC] pursuant to" Section 7.[131]

However, Section 7(b)(xii) does not end there. Section 7(b)(xii) further states that:

> [t]o the extent that *any amount has been reserved and withheld* from distribution from the Holdback Amount on the Second Release Date *on account of an unresolved claim for indemnification* and*, subsequent to the Second Release Date, such claim is resolved*, Buyer shall immediately release (x) to the Buyer Group the amount of Losses, if any, due in respect

---

[128] Pl. Mot. at 7.
[129] Compl. Ex. A, § 7(b)(xii) (emphasis added).
[130] Def. Opp'n at 22.
[131] Compl. Ex. A, § 7(b)(xii).

19

of such claim as finally determined and (y) to each Stockholder such Stockholder's Purchase Price Percentage of an amount equal to the excess, if any, of the amount theretofore reserved and withheld from distribution in respect to such claim over the payment, if any, made pursuant to the foregoing clause (x).[132]

Section 7(b)(xii) establishes that the parties contemplated a situation where, as here, an unresolved indemnification claim survived the Second Release Date. Section 7(b)(xii) allows CAC to reserve and withhold the amount asserted in the Second Claim past the Second Release Date until such claim is resolved. So long as the Second Claim is valid, CAC was entitled to retain the amount stated in the Second Claim past the Second Release Date.

There is a material issue of fact as to the validity of the Second Claim. Accordingly, the Court finds that a material issue of fact also exists as to whether CAC breached the PSA by failing to release the amount asserted in the Second Claim.

Accordingly, the Motion is **DENIED** with respect to the Second Claim.

### 2. *A material issue of fact exists as to whether CAC breached the PSA by failing to release the amount asserted in the Third Claim.*

Mr. Fellerman asserts that the Third Claim fails as CAC has not made a claim on the Undisputed Amount.[133] In support, Mr. Fellerman argues that (i) the Third Claim is untimely; (ii) the Third Claim fails to provide reasonable notice of what CAC is seeking indemnification for; and (iii) the Third Claim is "forward-looking," and thus, not contemplated by the PSA or permissible under Delaware law.[134] Mr. Fellerman emphasizes that CAC is in "plain violation" of the PSA by failing to release the amount asserted in the Third Claim.[135]

---

[132] *Id*.
[133] Pl. Mot. at 12.
[134] *See id*. at 13-21.
[135] *Id*. at 2.

20

CAC states that the Third Claim is valid.[136] CAC maintains that (i) the Third Claim is timely and (ii) it has provided sufficient detail to support the Third Claim.[137] CAC also posits that it was entitled to retain the Undisputed Amount as its contractual duties were discharged when Mr. Fellerman materially breached the PSA.[138] Additionally, CAC asserts that the doctrine of unclean hands bars Mr. Fellerman's breach of contract claim.[139]

Mr. Fellerman responds that CAC's argument regarding his alleged breach fails for two reasons. First, Mr. Fellerman contends that he did not commit a material breach that excused CAC's performance under the PSA.[140] Second, Mr. Fellerman asserts that, even if he did materially breach the PSA, CAC's options did not include "self-help."[141] Thus, it is Mr. Fellerman's position that, even "if CAC believed [Mr.] Fellerman had committed a total breach such that would excuse [its] future performance," CAC should have released the Undisputed Amount and sued for breach of contract.[142] Mr. Fellerman did not respond to CAC's unclean hands argument.

### i. Timeliness of the Third Claim

The first of Mr. Fellerman's arguments is that the Third Claim is untimely.[143] Mr. Fellerman provides that the Third Claim is not valid because the Third Claim was not made until after the Second Release Date and corresponding Applicable Limitations Date.[144] Specifically, Mr. Fellerman alleges that a finding that the Third Claim was timely made would "retroactively

---

[136] Def. Opp'n at 13.
[137] *See id*. at 15-18.
[138] *See id*. at 24-25.
[139] *See id.* at 22-23.
[140] Pl. Reply at 17.
[141] *Id*. at 14.
[142] *Id*. at 16.
[143] Pl. Mot. at 13.
[144] *See id*.

excuse [CAC's] breach" and "would render the Second Release Date … meaningless."[145] In

support, Mr. Fellerman relies upon PSA Section 7(b)(xii). Section 7(b)(xii), in relevant part,

states:

> [o]n the date that is twenty-four (24) months following the Closing Date (the "Second Release Date"), or if such date is not a business day, the following business day, [CAC] shall pay to each Stockholder such Stockholder's Purchase Price Percentage of the Holdback Amount that exceeds the sum of (I) all amounts theretofore distributed or disbursed to Stockholders pursuant to the foregoing sentence, (II) all amounts theretofore distributed or disbursed to the Buyer Group pursuant to this Section 7 and (III) the aggregate amount of Losses specified in any then unresolved good faith indemnification claims made by the Buyer Group pursuant to this Section 7.[146]

CAC stresses that the Third Claim was timely asserted.[147] CAC maintains that the

language contained in Section 7(a) supports a conclusion that the Third Claim was timely

asserted, even though the Third Claim was asserted after the Second Release Date.[148] Section

7(a) states:

> [i]n the event that (A) any breach or alleged breach of any representation or warranty by [SPS] or a Stockholder results from any action or inaction of the [SPS] or the Stockholders that constitutes fraud, intentional misrepresentation or willful misconduct or (B) any breach or alleged breach of any representation or warranty by [CAC] results from any action or inaction of [CAC] that constitutes fraud, intentional misrepresentation or willful misconduct, such representation or warranty shall survive the Closing and the consummation of the transactions contemplated hereby (regardless of any investigation by or on behalf of the damaged Party or the knowledge of any Party) and shall continue in full force and effect without any time limitation with respect to such breach or alleged breach.[149]

Delaware courts must "read a contract as a whole and … give each provision and term

effect, so as not to render any part of the contract mere surplusage."[150] Mr. Fellerman asks the

---

[145] *Id.*

[146] Compl. Ex. A, § 7(b)(xii).

[147] Def. Opp'n at 15.

[148] *See id.*

[149] Compl. Ex. A, § 7(a).

[150] *Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

Court to find in his favor on the issue of timeliness based upon the language contained in Section 7(b)(xii) while seemingly ignoring Section 7(a).

While Mr. Fellerman is correct that the Third Claim is untimely under Section 7(b)(xii), Section 7(a) carves out exceptions to the Applicable Limitations Date contained in Section 7(b)(xii). Section 7(a) provides that indemnification claims arising from "any breach or alleged breach of any representation or warranty by … SPS or [Mr. Fellerman] that constitutes fraud, intentional misrepresentation or willful misconduct … shall continue in full force and effect *without any time limitation* with respect to such breach or alleged breach."[151] Because the Third Claim is an indemnification claim based upon an alleged breach of the representations and warranties resulting from Mr. Fellerman's purported fraudulent conduct, the fraud exception contained in Section 7(a) appears to apply. As such, the time limitation contained in Section 7(b)(xii) is inapplicable and the Third Claim continues "in full force and effect without any time limitation."

Therefore, at this stage of the proceedings, the Court finds that the Third Claim was timely asserted.

### ii. Sufficiency of the Third Claim

The second of Mr. Fellerman's arguments is that the Third Claim fails to provide reasonable notice.[152] Mr. Fellerman advances essentially the same arguments that were made regarding the reasonableness of the notice in the Second Claim. The difference, as argued by Mr. Fellerman, is that the Third Claim is even more vague than the Second Claim. Mr. Fellerman asserts that there are "not even barebones details" of the losses CAC may have

---

[151] Compl. Ex. A, § 7(a).
[152] Pl. Mot. at 16.

23

incurred.[153] Conversely, Mr. Fellerman claims that there "is just the vague, catch-all statement that there may be Losses 'related to, among other things' the Indictment 'and the related proceedings,' and other damages attributable to [Mr. Fellerman's] conduct underlying [the Indictment and the related proceedings]."[154]

As it does with the Second Claim, CAC states that it has provided sufficient detail to support the Third Claim.[155] CAC maintains that it adequately described both the amount and nature of the loss.[156]

As stated above, PSA Section 7(b)(vi) describes the manner in which a party seeking indemnification must notify the indemnifying party of a claim. Section 7(b)(vi), in relevant part, states that a party seeking indemnification "must give the indemnifying Party (the "Indemnifying Party") written notice of such claim describing such claim and the nature and amount of the Loss, to the extent that the nature and amount thereof are determinable at such time…."[157]

Here, the fact that the Third Claim is purportedly even more vague than the Second Claim does not change the analysis as to Mr. Fellerman's reasonableness argument. In the Third Claim, CAC stated that:

> [It] has suffered Losses related to, among other things: (a) your criminal prosecution in United States v. Linden J. Fellerman . . . and the related proceedings (collectively, "the Prosecution"); and (b) other damages attributable to your conduct underlying the Prosecution, including Losses, direct, indirect, incidental, special or consequential and including lost profits, business interruptions and diminution in value based on a multiple of earnings or similar financial measure, including reasonable legal expenses and costs associated therewith the losses. [CAC] understand[s] that the Prosecution is ongoing, that no trial date has been set, and that the Prosecution involves your actions while employed at [SPS]. Because of the ongoing nature of these matters and because they continue to cause Losses to [CAC], [it is] unable to ascertain the full extent of the Losses at this time. . . .

---

[153] *Id.*
[154] *Id.* at 17.
[155] Def. Opp'n at 15-16.
[156] *See id.* at 17.
[157] Compl. Ex. A, § 7(b)(vi).

[and will therefore] retain the Holdback Amount in its entirety until it is able to ascertain the full amount of the Losses[.][158]

Like the Second Claim, the Third Claim appears to have complied with Section 7(b)(vi)'s notice requirement. CAC's allegation that it suffered lost profits, business interruptions, and diminution in value because of Mr. Fellerman's alleged criminal conduct provided Mr. Fellerman with notice of the *nature* of the loss.

Further, although CAC did not quantify the exact amount of the loss, CAC's statement that it will "retain the Holdback Amount in its entirety *until it is able to ascertain the full amount of the Losses*" seemingly complies with Section 7(b)(vi)'s "amount requirement." Section 7(b)(vi) contemplates a situation where the amount of the loss is not readily ascertainable at the time an indemnification claim is made. Specifically, Section 7(b)(vi) states that the nature and amount of the Loss should be described "to the extent that the nature and amount thereof are determinable at such time…." It follows that, although vague, CAC's Third Claim arguably complies with Section 7(b)(vi)'s notice requirement.

Therefore, at this stage, the Court finds that a material issue of fact exists as to whether CAC provided reasonable notice regarding the Third Claim. Like the Second Claim, the Court is unable to conclude that the Third Claim failed to provide Mr. Fellerman with "reasonable" notice as a matter of law because the Third Claim seemingly complies with Section 7(b)(vi).

### iii. Permissibility of the Third Claim

Mr. Fellerman's third argument is that the Third Claim is "forward-looking," and thus, not contemplated by the PSA or permissible under Delaware law.[159] Mr. Fellerman asserts that PSA Section 7(a) provides that "no party is entitled to recover for any Losses unless notice is

---

[158] Answer at 56-57.
[159] Pl. Mot. at 17.

delivered on or prior to the Applicable Limitation Date."[160] Mr. Fellerman claims that "if notice must be delivered by the Applicable Limitation Date," it follows that "the Loss must occur on or prior to the Applicable Limitation Date."[161] Thus, it is Mr. Fellerman's position that the PSA does not contemplate the Third Claim for "ongoing losses."[162]

Mr. Fellerman cites two Delaware cases that purportedly stand for the proposition that Delaware courts have previously rejected "placeholder or relation back" theories in the context of indemnification notices.

In *LPPAS Representative, LLC v. ATH Holding Company, LLC*, Highland Acquisition Holdings, LLC ("Highland"), acquired Pasteur Entities and HealthSun Entities.[163] Highland was subsequently acquired by Anthem.[164] The sellers agreed to place $100,000,000 in escrow as security for the buyer's indemnification claims, with the funds to be released over the next four years.[165] The purchase agreement allowed for indemnification for material misrepresentations or inaccuracies in representations and warranties.[166] Following the execution of the purchase agreement, Anthem made two indemnification claims, which were undisputed.[167] Anthem then made a third claim based upon a Department of Justice investigation for false reporting of insurance coding errors.[168] The Department of Justice then filed a complaint without naming as parties the entities acquired from the sellers, which eliminated the basis for indemnification.[169] Anthem then conducted its own investigation that led to the conclusion that the sellers had

---

[160] *Id.*
[161] *Id.*
[162] *See id.*
[163] *LPPAS Representative, LLC v. ATH Holding Company, LLC*, 2020 WL 7706937, at *2 (Del. Ch. Dec. 29, 2020).
[164] *See id.*
[165] *Id.* at *1.
[166] *Id.*
[167] *See id.*
[168] *See id.*
[169] *See id.* at *4.

engaged in fraudulent and improper coding practices.[170] Subsequent to the running of the applicable release date, Anthem a made fourth, untimely indemnification claim and refused to release the remaining escrow funds.[171] In the lawsuit that followed, Anthem, acknowledging that the fourth claim was untimely, argued that the fourth claim "relat[ed] back" to before the running of the applicable release date.[172] The court found that the relation-back argument ran contrary to the contract.[173] Additionally, the court found that the relation-back argument ran contrary to Delaware law in which courts have held that indemnitees may not assert "placeholder claims against escrow funds for which details are provided only after the due date for those claims have expired."[174]

In *Winshall v. Viacom International, Inc.*, a buyer made three timely but unsuccessful indemnification claims.[175] Following the passage of the applicable notice deadline, the buyer made a fourth, untimely indemnification claim.[176] The buyer claimed that its earlier notices had "'reserved its rights to seek indemnification for any other claims or matters.'"[177] The court disagreed, holding that allowing the purchaser to ignore the contractual deadline and make late claims would "constitute a unilateral rewriting of the contract and is impermissible."[178]

Both cases are nearly indistinguishable to the instant facts. However, both cases have one crucial distinguishable characteristic – the indemnification claims at issue in *LPPAS* and *Winshall* were untimely. Here, the Third Claim is timely for the reasons discussed above. Moreover, because the Third Claim is timely, CAC need not and does not argue that the Third

---

[170] *See id.* at *5.
[171] See *id*.
[172] *See id.* at *5.
[173] *See id.* at *8.
[174] *Id*.
[175] *See Winshall v. Viacom Intern. Inc*., 2012 WL 6200271, at *8 (Del. Ch. Dec. 12, 2012).
[176] *See id*.
[177] *Id.* at *3.
[178] *Id.* at *8.

Claim relates back to the Second Release Date. As such, Mr. Fellerman's argument that the Third Claim is an impermissible "placeholder" claim fails.

Therefore, the Court finds that the Third Claim is permissible under Delaware law.

### iv. CAC's Failure to Release the Amount Claimed in the Third Claim on the Second Release Date

Mr. Fellerman asserts that CAC "should have released the [amount claimed in the Third Claim] on the Second Release Date."[179] In support, Mr. Fellerman relies upon the same argument made in Section (V)(A)(1)(ii) of this opinion.

CAC claims that, because the Third Claim is valid and timely asserted, it is "entitled to retain" the amount claimed in the Third Claim.

As discussed above, because there is a material issue of fact as to the validity of the Third Claim, the Court finds that a material issue of fact also exists as to whether CAC breached the PSA by failing to release the amount asserted in the Third Claim.

Accordingly, the Motion is **DENIED** with respect to the Third Claim.

## B. CAC'S COUNTERCLAIMS

### 1. *CAC has stated a claim for fraud.*

Under Delaware law, to state a claim for fraud the pleading party must allege: (i) a false representation, usually one of fact; (ii) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (iii) an intent to induce the plaintiff to act or to refrain from acting; (iv) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (v) damage to the plaintiff as a result of such reliance.[180]

---

[179] Pl. Mot. at 7.
[180] *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008).

Chancery Rule 9(b) provides that, when pleading fraud, "the circumstances constituting fraud must be pled with particularity."[181] This requirement includes the "time, place, contents [,] and speaker."[182] However, "[m]alice, intent, knowledge and other condition of mind of a person may be averred to generally."[183]

### i. CAC's fraud counterclaim is not impermissibly bootstrapped.

Mr. Fellerman asserts that CAC's fraud claim is a "clear example of bootstrapping because the obligation allegedly breached arises solely under the contract."[184] Specifically, Mr. Fellerman claims that because CAC's fraud claim arises out of false statements made in connection with the representations and warranties provision, such a claim is impermissible under Delaware law.[185]

Mr. Fellerman relies upon *Transdev On Demand, Inc. v. Blackstreet Investment Holdings, LLC* and *MicroStrategy Inc. v. Acacia Research Corp.* In *Transdev*, a buyer alleged that the seller fraudulently induced it to enter into a sale based upon false statements made in connection with certain financial disclosures.[186] On that basis, the buyer brought claims for breach of contract, specific performance, and fraud.[187] The court dismissed the buyer's fraud claim finding that the claim arose "solely by contract."[188]

---

[181] *Id*. at 587-88 (citing Ct. Ch. R. 9(b)).
[182] *Pinnacle IV, L.P. v. CyberLabs AI Holdings Ltd.I,* 2024 WL 3252672, at *4 (Del. Super. July 1, 2024).
[183] *Hauspie*, 945 A.2d at 588.
[184] Pl. Mot. at 22.
[185] *See id*. at 23.
[186] *Transdev On Demand, Inc. v. Blackstreet Investment Holdings, LLC*, 2020 WL 7027538, at *1 (Del. Ch. Nov. 30, 2020).
[187] *Id*.
[188] *Id*. at *6.

In *MicroStrategy*, the court found that false representations and warranties under a contract could not be the basis of a fraud claim.[189] The court reasoned that fraud requires a misrepresentation beyond the representations made under the contract.[190]

In response, CAC argues that "the anti-bootstrapping rule does not apply to CAC's fraud claim."[191] CAC relies upon *Levy Family Investors, LLC v. Oars + Alps LLC*.[192]

In *Levy*, the court found that the bootstrapping rule "does not prevent a fraud claim against defendants who knew [contractual obligations] were false and yet made them anyway."[193] Additionally, the *Levy* court found that the bootstrapping rule does not prevent a party from bringing a fraud claim if "the conduct occurs prior to the execution of the contract and thus with the goal of inducing plaintiff's signature and willingness to close the transaction[.]"[194]

At this stage, Mr. Fellerman's bootstrapping argument fails. In its Counterclaim for fraud, CAC stated that Mr. Fellerman made false representations and warranties under PSA Section 4(h) and PSA Section 4(v). CAC asserted that "[Mr.] Fellerman represented and warranted that … '[SPS] has complied within the past three (3) years, and is in compliance with … in all material respects, all applicable laws applicable to SPS." Additionally, CAC alleged that "[d]uring the past five (5) years, none of … [SPS's] equity holders … its officers, directors or employees … while acting for or on behalf of [SPS] have, directly or indirectly, violated any … anti-corruption, anti-money laundering or anti-bribery Law[.]"

---

[189] *See id*. at 17.
[190] *See id*.
[191] Def. Opp'n at 19.
[192] 2022 WL 245543 (Del. Ch. Jan. 27, 2022).
[193] *Id.*, at *8.
[194] *Id*.

While Mr. Fellerman is correct that the aforementioned allegation arises from a false statement made in connection with the representations and warranties provision, CAC also alleged false representations made prior to the execution of the PSA. CAC pled that Mr. Fellerman "lied repeatedly to CAC about his and SPS's involvement in the criminal scheme *before CAC executed the PSA to purchase SPS*."[195] To support this allegation, CAC pled a myriad of facts showing that Mr. Fellerman made false statements throughout the negotiation process. For example, CAC pled that when the Department of Justice initiated the Civil Action, Mr. Fellerman only disclosed to CAC that some of SPS's clients were subject to the Civil Action and that SPS was an unknowing victim.[196]

Therefore, because CAC also pled that false representations were made prior to the execution of the PSA, the Court finds that CAC's fraud Counterclaim is not impermissibly bootstrapped to its breach of contract claim.

### ii. CAC has sufficiently pled fraud.

Mr. Fellerman further claims that even if the bootstrapping argument is rejected, "the damages that CAC has pled could not have been caused by the allegedly fraudulent statement."[197] Mr. Fellerman asserts that, because the alleged false statements arise from the representations and warranties (and thus, could not have been made until the time of Closing), such false statements could not have induced CAC to enter into the contract.[198]

CAC asserts that "the representations in the [PSA] are not the only lies Mr. Fellerman told CAC to induce CAC into purchasing his company."[199] CAC claims that "when the Civil

---

[195] Answer at 58.
[196] *Id.* at 51-52.
[197] Pl. Mot. at 24.
[198] *See id.*
[199] Def. Opp'n at 21.

31

Action initially arose during their negotiations, Mr. Fellerman misled CAC into believing SPS was an unknowing victim of the fraudulent scheme to ensure negotiations with CAC continued uninterrupted, which they did to CAC's detriment."[200]

CAC does not *solely* rely upon the false statements made in connection with the representation and warranties provision. As noted above, CAC's allegations also rely upon false statements that were made throughout the negotiation process. As such, CAC has pled facts sufficient to support a finding that Mr. Fellerman's alleged false statements made throughout the negotiation process were intended to, and in fact, did induce CAC into executing the PSA. Therefore, the Court finds that CAC has sufficiently pled fraud.

Accordingly, the Motion is **DENIED** with respect to CAC's fraud claim.

### 2. CAC has stated ripe claims for indemnification.

Under Delaware law, "[w]henever it appears by suggestion of the parties or otherwise that the Court lacks subject matter jurisdiction over a claim, the Court must dismiss that claim."[201] Ripeness is a jurisdictional question and Delaware courts lack subject matter jurisdiction when a claim is unripe.[202] "A case is ripe for judicial review when the dispute has matured to the point where the plaintiff has suffered or will imminently suffer an injury."[203]

Mr. Fellerman argues that the Second and Third Claims fail for the reasons set forth in Section A of this opinion.[204] Additionally, Mr. Fellerman asserts that even if the Third Claim for indemnification is valid, the Third Claim fails as it is unripe.[205][206] Mr. Fellerman maintains

---

[200] *Id*. at 21-22.
[201] *Lima USA, Inc. v. Mahfouz*, 2021 WL 5774394, at *6 (Del. Super. Aug. 31, 2021).
[202] *See id*. at *2.
[203] *Town of Cheswold v. Central Delaware Business Park*, 188 A.3d 810, 816 (Del. 2018) (citation omitted).
[204] Pl. Mot. at 25.
[205] *Id*.
[206] As explained above, Mr. Fellerman's arguments as to the Second and Third Claims fail. Thus, the analysis of this issue will only address Mr. Fellerman's ripeness argument as to the Third Claim.

that the Third Claim does not "assert alleged Losses that had happened" by the time the Third Claim was made.[207]  Conversely, Mr. Fellerman posits that the Third Claim "describes losses as 'ongoing' and not yet ascertained."[208]

Mr. Fellerman relies upon *Horton v. Organogenesis Inc.*, in which the court dismissed an indemnification claim as unripe where the indemnitee had not yet incurred costs.[209]

CAC does not address Mr. Fellerman's ripeness argument in its reply brief.

The language in the Third Claim is dipositive.  However, the ripeness argument does not address language contained in the Third Claim.  Specifically, the Third Claim states that CAC had already incurred losses.  The Third Claim states:

> [CAC] *has suffered Losses* related to, among other things: (a) your criminal prosecution in United States v. Linden J. Fellerman . . . and the related proceedings (collectively, "the Prosecution"); and (b) other damages attributable to your conduct underlying the Prosecution, including Losses, direct, indirect, incidental, special or consequential and including lost profits, business interruptions and diminution in value based on a multiple of earnings or similar financial measure, including reasonable legal expenses and costs associated therewith the losses. [CAC] understand[s] that the Prosecution is ongoing, that no trial date has been set, and that the Prosecution involves your actions while employed at [SPS].  Because of the ongoing nature of these matters and because they *continue to cause Losses* to [CAC], [it is] *unable to ascertain the full extent of the Losses at this time. . . .* [and will therefore] retain the Holdback Amount in its entirety until it is able to ascertain the full amount of the Losses[.][210]

The mere fact that CAC is currently unable to quantify the losses does not mean that the Third Claim is unripe merely because it is unliquidated.  The Third Claim makes clear that CAC has already suffered losses related to the Criminal Action, even though the full extent of those losses is undeterminable at the present time.  The Third Claim states that CAC "*has* suffered Losses" and will "*continue*" to incur Losses.

---

[207] Pl. Reply at 30.
[208] *Id*. at 30-31.
[209] *See Horton v. Organogenesis Inc.*, 2019 WL 3284737, at *4-5 (Del. Ch. July 22, 2019).
[210] Answer at 56-57.

Therefore, because CAC has alleged that it has already suffered Losses related to the Criminal Action, the Court finds that CAC's indemnification claim concerning the Third Claim is ripe for judicial adjudication.

Accordingly, the Motion is **DENIED** with respect to CAC's indemnification claims.

## C. MR. FELLERMAN IS NOT ENTITLED TO ATTORNEY'S FEES AND EXPENSES IN CONNECTION WITH THE MOTION.

Delaware law dictates that the default rule for fee-shifting is the American Rule.[211] Under the American Rule, "litigants are generally responsible for paying their own litigation costs."[212] However, Delaware courts have found that "a fee-shifting provision in an enforceable contract provides a clear exception to the default American Rule."[213]

Mr. Fellerman argues that he is entitled to attorney's fees and expenses under the PSA if he prevails in this action.[214] Mr. Fellerman cites to PSA Section 9(1). Section 9(1) provides that "[i]f any Party brings an action to enforce its rights under [the PSA], the prevailing party shall be entitled to recover its costs and expenses, including reasonable legal fees, incurred in connection with such action, including any appeal of such action."[215]

CAC does not dispute that Mr. Fellerman is entitled to attorney's fees and expenses under the PSA if Mr. Fellerman prevails in this action.[216]

Mr. Fellerman is correct that Section 9(1) provides an exception to the default American Rule and entitles him to reasonable attorney's fees and expenses if he prevails in the instant

---

[211] *See Avgiris Brothers, LLC v. Bouikidis*, 2023 WL 7137104, at *2 (Del. Ch. Oct. 31, 2023) (citation omitted).
[212] *DeMatteis v. RiseDelaware, Inc.*, 315 A.3d 499, 508 (Del. 2024) (citing *Mahani v. Edix Media Group, Inc.*, 935 A.2d 242, 245 (Del. 2007)).
[213] *Manti Holdings, LLC v. Authentix Acquisition Company, Inc.*, 2020 WL 4596838, at *4 (Del. Ch. Aug. 11, 2020).
[214] Pl. Mot. at 27.
[215] Compl. Ex. A, § 9(1).
[216] Def. Opp'n at 25.

action.  However, Mr. Fellerman has not prevailed on the Motion.  Therefore, the Court finds that Mr. Fellerman is not entitled to attorney's fees and expenses in connection with the Motion.

Accordingly, the Motion is **DENIED** with respect to Mr. Fellerman's entitlement to attorney's fees and expenses.

## VI.    CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion.

**IT IS SO ORDERED.**

December 16, 2025
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, President Judge

cc:    File&ServeXpress

35